591 S.E.2d 308

**LINDSIE D.L., Petitioner,**

v.

**RICHARD W.S., Respondent.**

No. 31562.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 18, 2003.

Decided Dec. 4, 2003.

---

John G. Ours, Esq., Petersburg, for Lindsie D.L.

Marla Zelene Harman, Esq., Franklin, Guardian ad Litem for Lindsie D.L.

Patricia L. Kotchek, Esq., Geary & Geary, Petersburg, for Richard W.S.

Joyce E. Stewart, Esq., Moorefield, Guardian ad Litem for Cassandra N.S.

MAYNARD, Justice.

Lindsie D.L.,[1] a minor, by her next friend and legal guardian, Judy P., appeals the February 3, 2003, order of the Circuit Court of Grant County that dismissed what she styled as a "Petition or Motion for Visitation," in which she requested the circuit court to grant her the right to regular visitation with her minor half-sibling. We choose to treat this appeal as a petition for a writ of habeas corpus which we believe to be the correct procedural vehicle to determine the issues herein. Accordingly, to allow us to proceed under the habeas framework, we deem that Lindsie D.L., by her next friend and legal guardian, Judy P., now asks to have Lindsie's half-sister, Cassandra N.S., brought before the circuit court and, after due notice to Cassandra's parent, Richard W.S., to have the circuit court, after taking evidence and upon application of the principles set forth in this opinion, determine whether visitation of Lindsie with her half-sister, Cassandra, should be awarded.

## I.

## FACTS

The petitioner, Lindsie D.L., was born to Dennis L. and Debbie M.L. on September 27, 1991, in Virginia. Lindsie's father, Dennis, was killed in 1995 in an accident at a construction site. Lindsie and her mother, Debbie M.L., subsequently moved to Grant County, West Virginia.

Thereafter, Debbie M.L. began a relationship with the respondent, Richard W.S., which resulted in the birth of Cassandra N.S. on May 23, 2000. Richard W.S. acknowledged paternity of Cassandra by a notarized "Declaration of Paternity" Affidavit the next day. Also, a certificate of live birth was filed for Cassandra with certification of personal information by Debbie M.L. in which Richard W.S. was identified as Cassandra's father. Lindsie and Cassandra lived together as sisters in the same household with their mother, Debbie M.L., from Cassandra's birth until October 1, 2001. On that date, Debbie M.L. was tragically killed in an automobile accident.

Pursuant to Debbie M.L.'s will, her mother, Mary Z., became Lindsie's guardian. Cassandra's father, Richard W.S., filed a petition for custody of Cassandra which was challenged by Mary Z. The Family Court of Grant County granted Richard W.S.'s petition, and found:

9. Due to the death of Debbie [M.L.], Petitioner is the sole living parent of Cassandra [N.S.].

10. Petitioner's custodial rights as the sole living parent of Cassandra [N.S.] are superior to those of Respondent[,] and Petitioner has rights protected by the Constitutions of the United States and the State of West Virginia as the legal parent of Cassandra [N.S.] to custody of his child unless he is unfit.

11. There is no evidence that Petitioner is not a fit parent.

12. Petitioner's custody of Cassandra [N.S.] should be confirmed and the Petition should be granted so that Petitioner shall have sole custody of her and sole custodial and decision-making responsibility for her.

---

1. We follow our customary practice of using initials in place of last names in cases involving sensitive facts and children.

Mary Z. subsequently appealed the Family Court order to the Circuit Court of Grant County which affirmed the order.

On December 5, 2002, Lindsie, in her own capacity, and by her legal guardian and next friend, Judy P.,[2] filed a "Petition Or Motion For Visitation" in the Circuit Court of Grant County in which she asserted, *inter alia*, that regular visitation would be in the best interest of the emotional health and well-being of both children. Richard W.S. moved to dismiss Lindsie's petition. By order of February 3, 2003, the circuit court found that because there is no common law or statutory right of visitation with a minor half-sibling, the circuit court has no jurisdiction of the subject matter. Accordingly, the circuit court dismissed the petition.

## II.

## DISCUSSION

■ In its order dismissing Lindsie's petition, the circuit court determined that there is no legal right to visitation with a minor half-sibling. However, in the 1989 case of *Honaker v. Burnside*, 182 W.Va. 448, 388 S.E.2d 322, this Court held in Syllabus Point 2, in part, that "[a]lthough custody of minor child should be with the natural parent absent proof of abandonment or some form of misconduct or neglect, the child may have a right to continued visitation rights with the ... half-sibling." Despite Richard W.S.'s strong efforts to distinguish *Honaker* from the instant case, actually the facts are really quite similar. *Honaker* involved the custody of a six-year old girl named Elizabeth Honaker. Elizabeth's parents divorced when she was just a little more than one-year-old and her custody was granted to her mother subject to reasonable visitation by her father. Subsequent to that divorce, Elizabeth's mother remarried and the couple had a son together. Elizabeth lived with her mother, stepfather and half-brother for about three and one-half years until her mother was killed in an automobile accident. In her last will and testament, Elizabeth's mother named as guardian of her two children Eliza-

beth's stepfather. Thereafter, Elizabeth's natural father sought and was granted custody of Elizabeth. In order to help lessen the emotional trauma Elizabeth suffered as a result of the death of her mother, the circuit court provided for a six-month transition period for the transfer of custody. The circuit court also stayed the execution of the custody order during the time period necessary for the stepfather to petition for appeal with this Court. Elizabeth's natural father then petitioned this Court for a writ of mandamus and/or prohibition, arguing that he was entitled to immediate custody of his daughter.

■ This Court thereupon denied the writ, and remanded to the circuit court with directions that the circuit court formulate a specific plan for transition to the natural father that would serve to alleviate any unnecessary trauma to Elizabeth, and to establish reasonable visitation rights with the stepfather and the half-sibling. In that case, we explained our rationale as follows:

We must ... consider ... what will be in the best interests of Elizabeth with regard to a continued relationship with her stepfather and half-brother Kinder. Undoubtedly, Elizabeth's best interests must be the primary standard by which we determine her rights to continued contact with other significant figures in her life.... "It is the benefit of the child that is vital." "Visitation is ... aimed at fulfilling what many conceive to be a vital, or at least a wholesome contribution to the child's emotional well being by permitting partial continuation of an earlier established close relationship." *Looper v. McManus*, 581 P.2d 487, 488 (Okla.Ct.App. 1978)....

The best interests of the child concept with regard to visitation emerges from the reality that [t]he modern child is considered a person, not a sub-person over whom the parent has an absolute and irrevocable possessory right. The child has rights.... Another concern is the need for stability in the child's life.... [T]ermination of visita-

2. According to Guardian Ad Litem Marla Zelene Harman, due to the age and ill health of Mary Z., Lindsie's guardian is now her aunt, Judy P., who was appointed as such by the Juvenile and Domestic Relations Court of Shenandoah County, Virginia on March 6, 2002.

tion with individuals to whom the child was close would contribute to instability rather than provide stability.... [E]ach case should be considered on its own facts[.] *Honaker*, 182 W.Va. at 452, 388 S.E.2d at 325–26 (internal quotation marks and footnotes omitted). Based on the foregoing, we now conclude that Lindsie may have a right to continued visitation with her half-sibling.[3]

▮ We are also mindful, however, that Lindsie's best interest is not the only consideration here. Visitation also must be in the best interest of Cassandra. Further, Lindsie's request for continued visitation implicates Richard W.S.'s fundamental liberty interests as a parent. Clearly, fit parents have the right to bring up their children as they choose. In the recent case of *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000),[4] the United States Supreme Court found that the application of a Washington nonparental visitation statute to a parent and her family violated the parent's due process rights to make decisions concerning the care, custody, and control of her daughters. The Supreme Court explained:

The liberty interest at issue in this case—the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by this Court. More than 75 years ago, in *Meyer v. Nebraska*, 262 U.S. 390, 399, 401, 43 S.Ct. 625, 67 L.Ed. 1042 (1923), we held that the "liberty" protected by the Due Process Clause includes the right of parents to "establish a home and bring up children" and "to control the education of their own." Two years later, in *Pierce v. Society of Sisters*, 268 U.S. 510, 534–535, 45 S.Ct. 571, 69 L.Ed. 1070 (1925), we again held

that the "liberty of parents and guardians" includes the right "to direct the upbringing and education of children under their control." We explained in *Pierce* that "[t]he child is not the mere creature of the State; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations." *Id.*, at 535, 45 S.Ct. 571. We returned to the subject in *Prince v. Massachusetts*, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944), and again confirmed that there is a constitutional dimension to the right of parents to direct the upbringing of their children. "It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." *Id.*, at 166, 64 S.Ct. 438.

*Troxel*, 530 U.S. at 65–66, 120 S.Ct. at 2060.

The statute at issue in *Troxel* provided that "[a]ny person may petition the court for visitation rights at any time including, but not limited to, custody proceedings. The court may order visitation rights for any person when visitation may serve the best interest of the child whether or not there has been any change of circumstances." *Troxel*, 530 U.S. at 61, 120 S.Ct. at 2057–58. The Supreme Court essentially found two problems with the Washington statute as written or applied. First, it was "breathtakingly broad" so as to "effectively permit[ ] any third party seeking visitation to subject any decision by a parent concerning visitation of the parent's children to state-court review." *Troxel*, 530 U.S. at 67, 120 S.Ct. at 2061. Second, it "contain[ed] no requirement that a court accord the parent's decision any pre-

---

**3.** The right to sibling visitation does not apply in adoption cases. This Court has previously indicated that "[f]inality is of the utmost importance in an adoption." *State ex rel. Smith v. Abbot*, 187 W.Va. 261, 266, 418 S.E.2d 575, 580 (1992). Further, "[o]nce an order of adoption becomes final.... [t]he child, to all intents and purposes, becomes the child of the person adopting him or her to the same extent as if the child had been born to the adopting parent in lawful wedlock." 14A Michie's Jurisprudence, *Parent and Child* § 27, at 285 (2001) (footnote omitted). *See also* W.Va.Code § 48–22–703(a) (2001) ("From and after the entry of such order of adoption, the

adopted child shall be, to all intents and for all purposes, the legitimate issue of the person or persons so adopting him or her and shall be entitled to all the rights and privileges and subject to all the obligations of a natural child of such adopting parent or parents.").

**4.** *See State ex rel. Brandon L. v. Moats*, 209 W.Va. 752, 551 S.E.2d 674 (2001), in which we discussed *Troxel* in connection with this State's Grandparent Visitation Act, W.Va.Code §§ 48–10–101 to –1201.

sumption of validity or any weight whatsoever. Instead, the Washington statute place[d] the best-interest determination solely in the hands of the judge." *Id.* According to the Court:

> [T]he [grandparents] did not allege, and no court has found that [the parent] was an unfit parent. That aspect of the case is important, for there is a presumption that fit parents act in the best interests of their children. . . .
>
> Accordingly, so long as a parent adequately cares for his or her children (*i.e.*, is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children.

*Troxel,* 530 U.S. at 68–69, 120 S.Ct. at 2061 (citation omitted).

■ This Court also has found a fundamental liberty interest in parents' care of their children. In Syllabus Point 1 of *In re Willis,* 157 W.Va. 225, 207 S.E.2d 129 (1973), we recognized that,

> In the law concerning custody of minor children, no rule is more firmly established than that the right of a natural parent to the custody of his or her infant child is paramount to that of any other person; it is a fundamental personal liberty protected and guaranteed by the Due Process Clauses of the West Virginia and United States Constitutions.

*See also State ex rel. Jeanette H. v. Pancake,* 207 W.Va. 154, 161, 529 S.E.2d 865, 872 (2000) (stating that "it is . . . well established that a parent has a constitutionally protected liberty interest in retaining custody of his or her child and is, therefore, entitled to certain due process protections when the State seeks to terminate the parent/child relationship");

*Overfield v. Collins,* 199 W.Va. 27, 34, 483 S.E.2d 27, 34 (1996) (recognizing that a natural parent "acquires a liberty interest in maintaining a substantial parental relationship with her children vis-a-vis third parties"); *State ex rel. Roy Allen S. v. Stone,* 196 W.Va. 624, 633, 474 S.E.2d 554, 563 (1996) (observing that liberty, within meaning of Due Process Clause, embraces rights of parenthood and holding that "a father has a liberty interest in maintaining an established parent-child relationship, regardless of whether the relationship is within traditional and official parameters"); and Syllabus Point 3, in part, *State ex rel. Brandon L. v. Moats,* 209 W.Va. 752, 551 S.E.2d 674 (2001) (holding that the West Virginia Grandparent Visitation Act "by its terms, does not violate the substantive due process right of liberty extended to a parent in connection with his/her right to exercise care, custody, and control over his/her child[ren] without undue interference from the state").[5]

■ Accordingly, based on this Court's previous holdings and the decision of the United States Supreme Court in *Troxel,* we now hold that the Due Process Clauses of Article III, Section 10 of the Constitution of West Virginia and of the Fourteenth Amendment of the Constitution of the United States protect the fundamental right of parents to make decisions concerning the care, custody, and control of their children. We further hold that there is a presumption that fit parents act in the best interests of their children.

■ Having discussed the applicable legal principles, we now apply these principles to the case before us. Because Lindsie may have a right to visitation with her half-sibling, Cassandra, we believe that a full evidentiary hearing should be held on the propriety of such visitation. There was some discus-

---

5. In light of the fundamental liberty interest that parents have in the care of their children, governmental intrusion into the family is warranted only in exceptional circumstances. The statutory bases for court interference with the parents' right to custody and control of their children are limited and specific. *See e.g.,* W.Va.Code § 48–9–206 (2001) (custody and visitation rights between parents in a divorce); W.Va.Code § 48–10–301 (2001) (grandparents' visitation); W.Va.

Code § 49–5–8 (1998) (taking a juvenile offender into custody before adjudication in certain enumerated circumstances); W.Va.Code § 49–6–3 (1998) (taking an allegedly neglected and/or abused child into temporary custody); W.Va. Code § 49–7–11 (1936) (care of child upon parent's conviction for contributing to the child's delinquency) and W.Va.Code § 49–6–5(a)(6) (2002) (termination of parental rights when child has been adjudicated neglected and/or abused).

sion during oral argument in regards to which courts, between family courts and circuit courts, have jurisdiction to conduct a sibling visitation proceeding. According to Article VIII, Section 16 of the State Constitution, family courts "shall have original jurisdiction in the areas of family law and related matters as may hereafter be established by law. Family courts may also have such further jurisdiction as established by law." Family court jurisdiction is specifically established by law in W.Va.Code § 51–2A–2 (2003). According to W.Va.Code § 51–2A–2(d), "[a] family court is a court of limited jurisdiction. A family court is a court of record only for the purpose of exercising jurisdiction in the matters for which the jurisdiction of the family court is specifically authorized in this section and in chapter forty-eight [§§ 48–1–101 et seq.] of this code." Circuit courts, in contrast, have original and general jurisdiction "except in cases confined exclusively by the Constitution to some other tribunal[.]" W.Va.Code § 51–2–2 (1978). Accordingly, we now hold that the jurisdiction of family courts is limited to only those matters specifically authorized by the Legislature, while circuit courts have original and general jurisdiction and other powers as set forth in Article VIII, § 6 of the Constitution of West Virginia. Therefore, circuit courts have jurisdiction of sibling visitation and all other domestic or family law proceedings concurrent in all respects with the jurisdiction of family courts. Any ambiguity concerning which court properly has jurisdiction of a matter should be resolved in favor of recognizing jurisdiction in the circuit courts.

Applying this rule to the instant facts, we note that neither W.Va.Code § 51–2A–2 nor §§ 48–1–101 et seq. specifically authorizes family courts to hear sibling visitation issues like the instant one.[6] Said another way, sibling visitation cases like the one at issue

are not confined exclusively, or at all, to family courts. We conclude, therefore, that the circuit courts have jurisdiction. Accordingly, we direct the Circuit Court of Grant County to hold a full evidentiary hearing on whether Lindsie should have regular visitation with her half-sibling. At this hearing, the circuit court, at a minimum, must take evidence and make rulings on several issues. First, the circuit court must hear and determine whether or not visitation with her half-sibling, Cassandra, is in the best interests of Lindsie. Second, the circuit court must also hear and determine whether such visitation is in the best interests of Cassandra, Lindsie's half-sister. In making this determination, there is a presumption that Richard W.S. is acting in the best interests of Cassandra. Therefore, if it is Richard W.S.'s position that visitation is not in the best interests of his daughter, the burden falls on Lindsie to rebut this presumption. Third, the circuit court must hear and determine whether or not an award of visitation will substantially interfere with the parent-child relationship and the fundamental rights of Cassandra's father, Richard W.S. See State ex rel. Brandon L., 209 W.Va. at 764, 551 S.E.2d at 686 (stating that the issues to be resolved in a grandparent visitation case are "whether an award of visitation is in the best interests of the child and will not substantially interfere with the parent-child relationship" (citation omitted)). Finally, there may be other issues beyond these threshold considerations to be resolved by the circuit court at the remand hearing, and those also may be determined by the circuit court with the input of the parties and counsel. Attorney fees may be one example of such issues, but no doubt others will arise, all of which must be decided by the circuit court.[7]

Moreover, in the circuit court's discretion, an order granting visitation to Lindsie with

6. W.Va.Code § 51–2A–2(a)(7) provides that family courts have jurisdiction in "[a]ll petitions for writs of habeas corpus wherein the issue contested is custodial responsibility for a child[.]" The issue in the instant case, however, is not custodial responsibility for a child but instead whether a minor should have the right to visit with her half-sibling.

7. In his oral argument before this Court, counsel for Lindsie raised the issue of which party would

be responsible for attorney fees. We note that the Grandparents Visitation Act provides, at W.Va.Code § 48–10–1101 (2001), that "[i]n an action brought under the provisions of this article, a circuit court may order payment of reasonable attorney's fees and costs based upon the equities of the positions asserted by the parties to pay such fees and costs." We believe that this is the proper rule to follow in the instant case.

Cassandra may place such conditions on visitation that it finds are in the best interests of the children and that also reasonably accommodate the rights and preferences of Richard W.S. Just as one example, the visitation should not result in Cassandra's court-ordered exposure to activities, conditions, circumstances, or influences that are contrary to her parent's reasonable preferences.

Finally, we are confident that the limited right of sibling or half-sibling visitation recognized herein and in *Honaker* conforms to the United States Supreme Court's opinion in *Troxel.* First, our decision is limited to siblings or half-siblings only, and applies to no other third party relationships. Therefore, it is not overly broad. Second, we give due consideration to the fundamental liberty interests of parents and recognize the presumption that a parent acts in the best interests of his or her child.

## III.

### CONCLUSION

For the reasons stated above, Lindsie's petition for a writ of habeas corpus is granted as moulded. We direct the Circuit Court of Grant County to conduct an evidentiary hearing and to decide the propriety of Lindsie's requested visitation with her half-sibling, Cassandra, based on the principles which we have set forth in this opinion.

Writ Granted as Moulded.