# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Nathan H.,**
**Petitioner below, Petitioner**

**FILED**
**June 10, 2020**
**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.) No. 19-0122 (Kanawha County 09-D-812)**

**Ashlee R.,**
**Respondent below, Respondent**


## MEMORANDUM DECISION


Petitioner Nathan H. ("the Father"),[1] by counsel Timothy A. Bradford, appeals the January 11, 2019, and January 17, 2019, orders of the Circuit Court of Kanawha County reversing the December 19, 2017, order of the Family Court of Kanawha County denying respondent Ashlee R.'s ("the Mother") request to relocate. The Mother, by counsel Paul S. Saluja, filed a response in support of the circuit court's orders.

The Court has considered the parties' briefs, oral arguments, and the appendix record on appeal. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure and is appropriate for a memorandum decision rather than an opinion. For the reasons expressed below, the circuit court's January 17, 2019, order is affirmed, and the circuit court's January 11, 2019, order is reversed, in part, and remanded to the family court for further proceedings consistent with this memorandum decision.

The Father and the Mother are the parents of H.J.H., a minor,[2] and were divorced by order entered on December 4, 2009. As part of the divorce proceeding, the family court adopted a parenting plan in which the parties agreed to a fifty-fifty split of custodial responsibility. The parenting plan was modified by agreed order entered October 5, 2012, due to the Mother's relocation to Raleigh County. With no objection by the Father, the parties agreed that the Father

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved with the case. *See In re K.H.*, 235 W. Va. 254, 256 n.1, 773 S.E.2d 20, 22 n.1 (2015).

[2] The minor child was three years old at the time of her parents' divorce and is now thirteen years old.

had approximately 35% custodial time with H.J.H., and the Mother had approximately 65% custodial time.[3]

On August 7, 2017, the Mother, by counsel, filed a Notice of Relocation, seeking to relocate to White Sulphur Springs, West Virginia.[4]  While living in Raleigh County, the Mother received and accepted an employment offer at the Greenbrier Clinic located in White Sulphur Springs in Greenbrier County. By accepting this offer, the Mother increased her income from approximately $60,000 per year to approximately $120,000 a year.  The Mother sought to modify the October 5, 2012, parenting plan by reducing the Father's parenting time with their child from 130 days to 113 days or from 35.6 % to 30.9 %. The Father objected to the relocation.

On November 17, 2017, the family court held a hearing on the relocation issue in which both the Father and the Mother testified.  By order entered December 19, 2017, the family court denied the Mother's request to relocate.  The family court found:

> 50.    Employment is a legitimate purpose. However, the Notice of Relocation was also filed to carry out a "war" against the petitioner father on child related issues.
> 51.    Under the circumstances of the recent lowering of father's child support on December 19, 2016, it is reasonable to infer that the respondent mother was attempting to get the child support increased through the changed parenting schedule in her proposed relocation because the father would be with the child less overnights.[5]

---

[3] In an ancillary matter, on October 24, 2016, a petition seeking modification of child support was filed, which resulted in the lowering of the amount of child support paid by the Father. This determination was affirmed by the circuit court and was not appealed to this Court.  After the Father's child support amount was lowered, the Mother admitted that in January of 2017, she told the Father that "there was a war."

The Father also filed a motion for a retroactive reduction of child support in conjunction with the reduction in his child support payment. The family court ultimately found that the Mother's failure to make full financial disclosures including some $88,000 in income from the sale of items on Ebay over the course of four years constituted a fraud perpetrated on the court and ordered a $9,908.60 retroactive child support reduction.  The Mother appealed the retroactive child support determination to the circuit court, which upheld the family court's decision on this issue in its January 11, 2019, order.  Neither party appeals that issue and, therefore, this Court does not address it.

[4] The Mother previously had filed a pro se Notice of Relocation to White Sulphur Springs on March 8, 2017.  The family court dismissed the Mother's notice to relocate "as a matter of equity and as a sanction[]" for the Mother's failure to provide financial information relative to the child support issue discussed *supra* note 3.  This order was not appealed.

[5] *See generally Nichole L. v. Steven W.*, 241 W. Va. 466, 474, 825 S.E.2d 794, 802 (2019)(discussing appropriateness "for taking caretaking functions to be taken into consideration

52. The contemplated relocation may be, in-part, for a legitimate purpose. However it is not in good faith.

53. The relocation was reasonable in light of a legitimate purpose given the $120,000 salary and the benefits with the position.

(Footnote added). But despite the family court finding that "[n]either party put on any real evidence on the effects of relocation on the minor child[,]" the family court found the Mother's proposed relocation and parenting plan were "not in the best interests of the child." The family court also moved the drop-off point for the child from Marmet, West Virginia, to Beckley, West Virginia, and, sua sponte, ordered that the child support paid by the Father "be reduced by $200.00 per month to cover the petitioner father's new long distance visitation costs," due to this change. Further, the family court gave the Father an additional week of parenting time during the summer school vacation, modifying the 2012 agreed parenting plan.[6]

The Mother appealed the December 19, 2017, order to the circuit court. The circuit court held the first of two hearings on May 24, 2018. In the first hearing, the circuit court found that the family court's findings regarding the Mother's relocation to White Sulphur Springs "were clearly erroneous" and that the family court had abused its discretion "in not affording her the opportunity to relocate under the circumstances[.]" The circuit court further determined that it was premature for the family court to have reduced child support by $200 a month due to increased travel as there was an absence of any type of evidence and remanded this issue back to the family court.

On August 21, 2018, while the appeal was still pending before the circuit court,[7] the Mother filed another "Notice of Relocation and Motion of the Respondent for the Circuit Court to Retain Jurisdiction." This filing was due to the Mother's remarriage on March 2, 2018. In this relocation notice, the Mother planned to relocate with the child to Draper, Virginia, near Wytheville. The Mother's new husband was a physician and had accepted a job at the Wythe County Community Hospital in Wytheville. Because of his duties, he had to reside within thirty minutes of the hospital. The Mother was also pregnant with her new husband's child. The Mother indicated that there were no changes to her proposed modified parenting plan offered with her prior relocation notice to White Sulphur Springs. The Mother asked that the circuit court retain jurisdiction given its "prior ruling to grant the relocation previously requested by the Respondent [Mother] and the lack of any impairment to the custodial responsibilities of the Petitioner [Father] there is no change of circumstances under W. Va. Code § 48-9-403."

The Father objected not only to the motion to relocate, but also to the motion that the circuit court retain jurisdiction. The Father argued that the circuit court did not have original jurisdiction

when calculating the proportion of each parent's custodial responsibility" and not only each parent's overnight visits with the child).

[6] The Mother raises no argument regarding the additional week given to the Father in her petition for appeal filed with this Court.

[7] The appeal was still pending due to additional documentation sought by the circuit court regarding the retroactive child support issue. *See supra* note 3.

over the motion. The Father maintained that there is no concurrent jurisdiction of the family court and the circuit court in cases involving relocation petitions. The Father contended that the circuit court only has jurisdiction once an appeal from family court occurs.

On November 26, 2018, the circuit court conducted a second hearing. The circuit court found, over the Father's objection, that the move to Wytheville, Virginia, instead of White Sulphur Springs, West Virginia, was not "any material change" in what the circuit court previously ordered and that the move was "in the best interest of" the minor child to be with her Mother and sibling-to-be. The circuit court noted the Father's continuing objection to its exercise of jurisdiction.

Following this hearing, the circuit court entered two orders in January of 2019. The January 17, 2019, order reflected its rulings from the May 24, 2018, hearing, including finding the Mother's requested relocation to White Sulphur Springs to be warranted. Specifically, the circuit court found that

> [t]he requested relocation of the [r]espondent [Mother] was warranted as a move made in good faith for a legitimate purpose and to a location reasonable in light of that purpose. That the [f]amily [c]ourt findings to the contrary were clearly erroneous, that [the family court] abused [its] discretion in not affording [respondent] the opportunity to relocate under the circumstances.

Further, the circuit court remanded to the family court for specific findings relating to a $200 credit towards the Father's child support obligation for travel expenses.

The circuit court's January 11, 2019, order set forth its rulings from the November 26, 2018, hearing. In that order, the circuit court found that because it was a court of general jurisdiction, it had jurisdiction to rule on the second relocation notice filed by the Mother wherein she requested to relocate to Wytheville, Virginia. The circuit court found that the Mother's "proposed relocation to Wytheville, Virginia, where her current spouse is gainfully employed, will not substantially interfere with this Court's previously adopted parenting plan[,]" and that "[t]he proposed relocation is consistent with the terms of W. Va. Code § 48-9-403(d)(2) and is therefore APPROVED, RATIFIED, CONFIRMED, and ADOPTED by the Court."[8]  It is from these two orders that the Father appeals.

The Father raises four assignments of error on appeal. Initially, the Father argues that the circuit court exceeded its jurisdiction by considering the Mother's second notice of relocation. The Father also argues that the circuit court erred in reversing the family court's order denying the Mother's first notice of relocation to White Sulphur Springs. Additionally, the Father argues that

---

[8] The circuit court also ordered that the Mother repay the Father $9,908.60 for retroactive child support, finding the family court did not err on this issue. Again, this issue is not appealed by the Mother. *See supra* note 3.

the circuit court erred in denying his objection to the Mother's relocation to Wytheville, Virginia. Finally, the Father assigns as error the circuit court's ruling that remanded the case to the family court for further findings on the child support reduction due to travel expenses. We will address each assignment of error in turn.

Our standard of review of circuit court's orders is well settled:

> "'In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.' Syllabus, *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004)." Syllabus point 1, *Storrie v. Simmons*, 225 W. Va. 317, 693 S.E.2d 70 (2010) (per curiam).

*Nicole L.*, 241 W. Va. at 468, 825 S.E.2d 796, Syl. Pt. 1.

The first issue concerns the circuit court's jurisdiction to entertain the Mother's second notice of relocation to Wytheville, Virginia. The Father argues that both the Legislature and this Court have determined that the family court has jurisdiction to hear questions regarding parenting plans and allocation of custodial responsibility—not the circuit court. According to the Father, the proper procedure was for the family court to hear evidence on the proposed relocation to Virginia. The filing of a notice of relocation—which the Mother filed in family court while the case was on appeal to the circuit court—did not give the circuit court the right to disregard the jurisdiction of the family court as set forth in West Virginia Code § 51-2A-2, as there is no dual or concurrent jurisdiction on these types of issues.[9] We agree.

---

[9] We disagree with the Mother's argument that our decision in *Lindsie D.L. v. Richard W.S.*, 214 W. Va. 750, 591 S.E.2d 308 (2003), gave the circuit court concurrent jurisdiction to hear the relocation issue. Instead, we find that the facts of the *Lindsie D.L.* case make it distinguishable from the instant case.

The issue in *Lindsie D.L.* involved a minor seeking visitation with her minor half-sibling. The circuit court had dismissed the action finding that there was no statutory or common law right of visitation between the minor and her minor half-sibling and, therefore, the circuit court had no jurisdiction. *Id.* at 752-53, 591 S.E.2d at 310-11.

This Court granted a writ of habeas corpus and remanded the case to the circuit court for a hearing, finding that the circuit court had concurrent jurisdiction with the family court to decide the half-sibling visitation issue under the facts before it, stating:

> Applying this rule [that concurrent jurisdiction between the family court and circuit court existed] to the instant facts, we note that neither W. Va. Code § 51-2A-2 nor §§ 48-1-101 *et seq.* specifically authorizes family courts to hear sibling visitation issues

5

The West Virginia Constitution, West Virginia Code § 51-2A-2, and the West Virginia Rules of Practice and Procedure for Family Court[10] expressly indicate that the matter sub judice should have been heard first by the family court. Specifically, the West Virginia Constitution provides: "Family courts shall have original jurisdiction in the areas of family law and related matters as may hereafter be established by law." W. Va. Const. art. VIII, § 16. Further, West Virginia Code § 51-2A-2(a)(9) provides that "[t]he family court shall exercise jurisdiction over the following matters . . . ; (9) All motions for modification of an order providing for a parenting plan or other allocation of custodial responsibility or decision-making responsibility for a child or for child support or spousal support." This statutory provision also provides for concurrent jurisdiction of the circuit court with the family court only as follows:

> *If an action* for divorce, annulment, or separate maintenance *does not require the establishment of a parenting plan or other allocation of custodial responsibility or decision-making responsibility for a child and does not require an award or any payment of child support*, *the circuit court has concurrent jurisdiction with the family court over the action if*, at the time of the filing of the action, the parties also file a written property settlement agreement executed by both parties.

---

> like the instant one. Said another way, sibling visitation cases like the one at issue are not confined exclusively, or at all, to family courts. We conclude, therefore, that the circuit courts have jurisdiction.

214 W. Va. at 756, 591 S.E.2d at 314 (footnote omitted). In the instant case, in contrast to *Lindsie D.L.* and as discussed more fully above, West Virginia Code § 51-2A-2 specifically authorizes only the family courts to hear parenting plan modification issues.

[10] Rule 3(b) of the West Virginia Rules of Practice and Procedure for Family Court provides:

> Effective January 1, 2002, all family court cases pending before the circuit court, whether on review of recommended order or otherwise, shall be transferred to the jurisdiction of the family court. In those cases where a recommended order has been previously filed, the family court shall enter a final order as soon as practical after transfer; provided, however, that if the parties have previously filed objections to a recommended order, the family court judge shall consider those objections and rule upon them as part of the family court final order. Where a circuit court has conducted evidentiary proceedings in a case prior to January 1, 2002, the circuit court may request, by January 31, 2002, pursuant to W.Va. Code § 51-2A-19(b), and taking into account the circumstances of the case, that the circuit court judge be appointed as a family court judge in such case.

*Id.* § 51-2A-2(b) (emphasis added).[11]

Pursuant to the express provisions of West Virginia Code § 51-2A-2(a)(9), because parent relocation issues necessarily involve motions to modify "parenting plan[s] or other allocation of custodial responsibility or decision-making responsibility for a child," they fall within the jurisdiction of the family court and the circuit court does not have concurrent jurisdiction over these matters. The circuit court, therefore, did not have jurisdiction to resolve the second Notice of Relocation filed by the Mother to relocate to Wytheville, Virginia. We reverse the circuit court and remand to the family court for further proceedings on this issue.[12] As it was represented during oral argument before this Court that the Mother has relocated to Virginia, upon remand, the relocation issue should be resolved by the family court in an expedited manner through a hearing on the notice to relocate to Virginia within sixty days from the date this memorandum decision is issued.

The Father next argues that the circuit court erred when it reversed the family court's order, which denied the Mother's first notice of relocation to White Sulphur Springs. According to the Father, the circuit court was focused primarily on the job opportunity for the Mother and not the best interests of his minor child. The mother argues that she sought to advance the economic best interests for herself and her child. She contends that she only sought to rearrange the parenting plan, "not impair the schedule or reduce the time" that the Father could spend with their child. The Mother maintains that the move was in good faith and for a legitimate purpose.

We begin our discussion of this issue by noting that the parties conceded that neither of them exercised a significant majority of the custodial responsibility for the child as defined by West Virginia Code § 48-9-403.[13] Because neither party exercises the statutory seventy percent of

---

[11] Moreover, West Virginia Code § 51-2A-11(a) sets forth the jurisdiction of the circuit court as an appellate court by providing for an appeal of a family court order to the circuit court within thirty days following the entry of a final order.

[12] Because the circuit court did not have jurisdiction to resolve the Mother's second Notice of Relocation to Wytheville, thereby necessitating a remand to the family court for resolution, we find the Father's assigned error regarding the circuit court's denial of his objection to the Mother's relocation to Virginia to be moot.

[13] West Virginia Code § 48-9-403(d)(1), provides:

> A parent who has been exercising a significant majority of the custodial responsibility for the child should be allowed to relocate with the child so long as that parent shows that the relocation is in good faith for a legitimate purpose and to a location that is reasonable in light of the purpose. The percentage of custodial responsibility that constitutes a significant majority of custodial responsibility is seventy percent or more.

custodial time constituting a "significant majority," West Virginia Code § 48-9-403(d)(2) sets forth the necessary analysis that a court must undertake:

> If a relocation of the parent is in good faith for legitimate purpose and to a location that is reasonable in light the purpose and if neither has been exercising a significant majority of custodial responsibility for the child, the court shall reallocate custodial responsibility based on the best interest of the child, taking into account all relevant factors including the effects of the relocation on the child.

*Id*. Accordingly, if a parent's desired relocation is in good faith, for a legitimate purpose and to a location that is reasonable in light of that purpose, the court's inquiry turns to reallocating custodial responsibility based upon the child's best interests. *Id*.

Based upon our review of the record, the circuit court agreed with the family court's order finding the Mother's relocation to White Sulphur Springs was for a legitimate purpose and to a reasonable location "given the vast increase in salary to $120,000.00 and the benefits with the position." The circuit court, however, found that the family court clearly erred and abused its discretion in ruling that the relocation was not in good faith and was not in the child's best interest. Specifically, the circuit court stated in response to the Father's argument that the relocation was not in his child's best interest:

> [W]hy isn't it in the child's best interest for the mother to be able to provide for the child like that, and have that much more salary, that much more position, that much more of a position of frankly, prominence, and be able to take care of the child better?
>
> . . . .
>
> But it does [benefit the child]. I mean, to me . . . it's helpful for the child for the mother to be working in Greenbrier County. The child to be educated in Greenbrier County. If something happens at school, if she needs to pick her up, it's – it just works.

Based upon the foregoing, we conclude that the circuit court did not err in its determination that the family court erred in denying the Mother's relocation to White Sulphur Springs.

Finally, the Father argues that the circuit court erred in remanding the case to the family court for further findings on the child support reduction of $200 the family court ordered due to travel expenses. The Father argues that the family court had a right to make an adjustment under West Virginia Code § 48-13-702[14] and the family court's ruling should not be disturbed. We

---

[14] West Virginia Code § 48-13-702 provides for a deviation from the child support guidelines for "[l]ong distance visitation costs."

disagree. The circuit court properly found that the family court failed to make specific findings relating to the reasons for the $200 credit or deviation from the child support guidelines. Our review of the record shows it is devoid of any evidence supporting such a deviation. Accordingly, we affirm the circuit court's ruling sending this case back to the family court for further findings.

For the foregoing reasons, we reverse the circuit court's January 11, 2019, order, in part, and remand the matter to the family court for further proceedings, including a hearing on the Mother's notice to relocate to Virginia within sixty days from the date this memorandum decision is issued, and as further set forth in this decision; and we affirm the circuit court's January 17, 2019, order.

Affirmed, in part;
Reversed, in part, and remanded
with directions.

**ISSUED**:  June 10, 2020

**CONCURRED IN BY**:
Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

9