No. 21-0898 – *In re F.N., G.N., B.N., M.E., and K.E.*

Wooton, Justice, dissenting:

Inasmuch as the circuit court terminated the petitioner's parental rights based in large part on its assessment of the petitioner's credibility – the court variously characterized her testimony as inconsistent "with regard to [B.C.] and his fitness to be around the children," and further "doubt[ed] her sincerity as to her commitment to ending her relationship with [B.C.] at the eleventh hour" – I would ordinarily be reluctant to second-guess either that assessment or the court's legal conclusions flowing therefrom, in view of our highly deferential standard of review. *See, e.g., In re Emily*, 208 W. Va. 325, 540 S.E.2d 542 (2000) ("For appeals resulting from abuse and neglect proceedings . . . findings of fact are weighed against a clearly erroneous standard."). *Id.* at 332, 540 S.E.2d at 549. In this case, however, the appendix record clearly demonstrates that the petitioner's rights were terminated not because she failed to do what was required under the terms of her improvement period, but rather because of her belief, however misguided, that the judicial system was depriving her of "a voice or a say" by insisting she immediately, and unquestioningly, accept the proposition that B.C. posed a danger to her children.

It is not my intention to champion the cause of B.C., a registered sex offender whose conviction of misdemeanor battery of a 13-year-old girl was deemed to have been sexually motivated, resulting in the requirement that he register as a sex offender for life.

1

*State v. C[.]*, No. 13-1209, 2014 WL 6607461 (Nov. 21, 2014) (memorandum decision).[1]

It was eminently reasonable for the circuit court to order that she not permit any contact between B.C. and her children, and the record is undisputed that no such contact took place during the entirety of her improvement period. However, there was no requirement in the stipulations of the improvement period that the petitioner immediately break off her personal relationship with B.C., despite the fact that multidisciplinary treatment team ("MDT") participants were urging her to do just that. Rather, the improvement period order simply required the petitioner to have individualized therapy to "obtain knowledge related to her relationships with questionable people[2] and the effects on her children when engaging in a relationship with a registered sex offender[]" – *which she ultimately did.* Therefore, the court's factual conclusion that the petitioner had violated the terms of the improvement period order by continuing to see B.C. during the course of the improvement period was clearly erroneous.

---

[1] This case had a complex procedural history. B.C. was initially convicted by a Harrison County jury of sexual abuse by a parent, guardian or custodian, W. Va. Code § 61-8D-5 (2020); however, the circuit court later granted a new trial on the ground that certain testimony could have unduly prejudiced the jury. Thereafter B.C. entered a *Kennedy* [*Kennedy v. Frazier,* 178 W. Va. 10, 357 S.E.2d 43 (1987)] plea to misdemeanor battery, was sentenced to one year in jail, and was ordered to register for life as a sex offender.

In the instant case, the petitioner appears to have been unaware of the trial which preceded the *Kennedy* plea, since all of the alleged evidence which convinced her of B.C.'s innocence would have been, or could have been, presented to the jury which nonetheless found him guilty beyond a reasonable doubt.

[2] It is unclear who these other "questionable people" might be, as the petitioner's former husbands were judicially deemed to be fit and proper custodians for their respective children.

As every case rises or falls on its unique facts, it must be acknowledged that at the outset of the abuse and neglect proceedings it was not wholly unreasonable for the petitioner to think that B.C. was being misjudged by Doddridge County authorities. Prior to her move to Doddridge County her relationship to B.C. had been known to Harrison County Child Protective Services, who raised no objection because B.C.'s sentencing order contained no restrictions on his ability to be around children.[3] Further, B.C. had given the petitioner a job at a time when she was in desperate need of employment, had never shown any indication of aberrant behavior in her presence, and had obviously misled her as to the facts and circumstances of his conviction. *See supra* note 1.[4] Accordingly, the purpose of requiring that the petitioner participate in therapy was for her to come to the realization – a realization that obviously would not happen overnight – that any relationship with a convicted sex offender carries unacceptable risks for the well-being of children, no matter how extenuating the circumstances may appear to be.

---

[3] It is evident from the record that the petitioner failed to understand – for a significant period of time, if ever – that she was prohibited from permitting B.C. to be around her children not based on anything contained in B.C.'s sentencing order, but rather from a stipulation contained in a domestic violence protective order she had obtained against her ex-husband. This order, although referred to in the parties' respective briefs, is not contained in the appendix record.

[4] In this regard, the petitioner's self-styled "investigation" seems a classic example of confirmation bias, a concept well known to the law.

Although the petitioner delayed the onset of therapy, initially because she believed she didn't need it and then because she didn't have the necessary flexibility in her work schedule, by the time of the dispositional hearing she had been in bi-weekly or weekly therapy for six months. Therefore, the court's factual conclusion that the petitioner had violated the terms of the improvement period by failing to participate in therapy was clearly erroneous.

The guardian ad litem counters that a circuit court's decision to terminate parental rights is not dependent upon the successful completion of the terms contained in a family case plan or improvement period, citing *State ex rel. Amy M. v. Kaufman*, 196 W. Va. 251, 470 S.E.2d 205 (1996), where this Court wrote that "it is possible for an individual to show 'compliance with specific aspects of the case plan' while failing 'to improve . . . [the] overall attitude and approach to parenting.'" *Id*. at 258, 470 S.E.2d at 212 (citing *W. Va. Dep't. of Human Serv. v. Peggy F*., 184 W. Va. 60, 64, 399 S.E.2d 460, 464 (1990)). I am reluctant to accept the proposition that such a nebulous and subjective concept as one's "overall attitude and approach to parenting" is a sufficient basis on which to overcome what we have long recognized as "the right of a natural parent to the custody of his or her infant child . . . [which] is a fundamental personal liberty protected and guaranteed by the Due Process Clauses of the West Virginia and United States Constitutions." Syl. Pt. 2, in part, *Lindsie D.L. v. Richard W.S*., 214 W. Va. 750, 591 S.E.2d 308 (2003). In this case, the improvement period required that the petitioner not allow any contact between B.C. and the children; that she take part in individualized therapy; that she attend parenting

4

classes with a MDT-approved provider; that she submit to drug screening;[5] that she attend scheduled visitation with her children; that she maintain a residence that is safe and stable for her children; that she maintain at least part-time employment;[6] that she attend all MDT meetings and court hearings; and that she comply with all directives from the Department of Health and Human Resources ("DHHR") regarding payment for services – again, all of which she did. Further, she did ultimately end her relationship with B.C.,[7] although not quickly enough to satisfy the circuit court and for reasons the court deemed unsatisfactory.[8]

Under the unique facts and circumstances of this case, I would reverse the circuit court's termination of the petitioner's rights. There was no urgency here, as all of the petitioner's children were with their fathers (one non-abusing and one who had successfully completed an improvement period) and thus permanency was not an issue.

---

[5] After it became apparent from early screens that the petitioner does not use illicit drugs, she was excused from further compliance with this requirement.

[6] The petitioner no longer works for B.C.; she obtained a certification that allowed her to secure full-time employment working from home.

[7] B.C., a reluctant witness who had been subpoenaed by the DHHR, corroborated the petitioner's testimony as to the breakup. Notwithstanding the circuit court's skepticism as to whether the relationship had really ended, or ended for good, there was no evidence to the contrary.

[8] The petitioner testified that she still felt B.C. had been wrongly convicted and was being misjudged by everyone involved in the abuse and neglect proceeding; however, she acknowledged the Doddridge County authorities' point of view and accepted the fact that she had to – and did – end the relationship. In short, she put her children ahead of her relationship with B.C.

The petitioner had done everything required of her during the improvement period and had ultimately ended what the court deemed to be a problematic relationship with B.C. – a relationship that was the *only* basis for this abuse and neglect proceeding.[9] Although the petitioner is estranged from her two older children, for reasons that are not clear from the appendix record, the three younger ones have a close, loving bond with their mother and are now relegated to whatever visitation their father may permit, if any.

It should not be this easy for us to deny an individual's right to the custody, care and control of his or her infant children, whether biological or adopted. Under the facts and circumstances of this case, I believe that an injustice has been done to a parent who did everything ever required of her; the petitioner's only misstep was believing that she was entitled to "a voice or a say" on an issue long since foreclosed, at least in practical effect, by this Court's precedents.

For these reasons, I respectfully dissent.

---

[9] Although the petition originally contained some vague allegation involving the children's hygiene, that allegation was never substantiated and formed no part of the adjudication or disposition in this case.