**FILED**

**May 13, 2026**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In Re A.A., G.C., K.C.-1, K.C.-2, and P.C.*, No. 24-765

**TITUS, Justice, joined by Bunn, Chief Justice, dissenting**:

A parent's decision to voluntarily relinquish his or her parental rights to a child is one of the most serious decisions a parent could ever confront. To ensure that a parental relinquishment is voluntarily, knowingly, and intelligently made, circuit courts must accurately advise parents of their rights, options, and consequences in a relinquishment colloquy in accordance with Rule 35 of the Rules of Procedure for Child Abuse and Neglect Proceedings ("Rule 35"). Due process requires circuit courts to adhere to exceedingly high standards when determining whether a parent fully understands the rights and consequences attendant to relinquishing fundamental constitutional rights to the care, custody, and control of his or her children. In this case, the record is clear that the circuit court's colloquy fell short of Rule 35's requirements and that the petitioner's relinquishment forms failed to fill that critical gap. It is equally evident that the petitioner raised this issue on appeal. For these reasons, I respectfully dissent to the majority's decision affirming the circuit court's order accepting the petitioner's relinquishment of her parental rights to her five children.

The majority contends that the petitioner did not raise the circuit court's failure to comply with Rule 35 as an assignment of error, but the logic of this contention eludes me. The majority's discussion begins with "[t]he petitioner argues that the circuit court erred in allowing her to voluntarily relinquish her parental rights to her five children." This argument requires that we examine whether the circuit court followed proper

1

procedures when accepting her relinquishments. The majority goes on to state that the petitioner acknowledges that the relinquishments could not be overturned unless there was proof that they were obtained through fraud or duress or that they "*did not comply with West Virginia Code § 49-4-607 or Rule 35 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings*." (Emphasis added, footnote omitted). Therefore, the issue of whether the circuit court followed proper procedures when accepting the relinquishment of her parental rights is squarely before the Court and the majority has bypassed the key question presented in this case. Further, its decision is at odds with the Rules of Procedure for Child Abuse and Neglect Proceedings and the petitioner's constitutional procedural due process protections.

This Court has held that a circuit court must abide by the relevant provisions of the Rules of Procedure for Abuse and Neglect Proceedings when accepting a parent's voluntary relinquishment. *See* Syl. Pt. 3, in part, *In re James G.*, 211 W. Va. 339, 566 S.E.2d 226 (2002) ("In the context of an abuse and neglect proceeding, a court may accept a parent's voluntary relinquishment of parental rights . . . provided that the agreement meets the requirements of W. Va. Code § 49–6–7 (1977), where applicable, and the relevant provisions of the Rules of Procedure for Abuse and Neglect Proceedings.").

Rule 35 provides the prerequisites for a circuit court's acceptance of a parent's voluntary relinquishment of parental rights. Rule 35 states that the circuit court must make the following determinations:

(3) If the parent is present in court and voluntarily has signed a relinquishment of parental rights, the court *shall determine* whether the parent fully understands the consequences of a termination of parental rights, is aware of possible less drastic alternatives than termination, and was informed of the right to a hearing and to representation by counsel.

W. Va. R. P. Child Abuse & Neglect Procs. 35(a)(3) (emphasis added). There is no question that the circuit court failed to satisfy these requirements.

At a hearing held in July 2024, the children's guardian ad litem and the petitioner's counsel informed the circuit court that the petitioner intended to relinquish her parental rights to her five children. The circuit court asked the petitioner's counsel whether he had had "sufficient time and opportunity to be able to go over everything with [the petitioner] to make sure that she feels that she understands what's going on?" The petitioner's counsel confirmed, "Your Honor, we've had numerous discussions, including several today." Counsel also confirmed that he had "answered all the questions [the petitioner had] posed to [him,]" and he did not believe that the petitioner had "any others." The circuit court asked the petitioner, "Ma'am, do you have any questions that you would like to pose to me?" "I don't think so," she answered. It also asked the petitioner whether anyone had "threatened, any coercion, undue influence, anything like that to get you to do this?" She responded, "No, Your Honor."

As this exchange demonstrates, the circuit court did not determine whether the petitioner fully understood "the consequences of a termination of [her] parental rights, [was] aware of possible less drastic alternatives than termination, and was informed of the

3

right to a hearing and to representation by counsel[,]" as required by Rule 35. Nor do the petitioner's signed voluntary relinquishment forms salvage the circuit court's deficient inquiry.

The petitioner signed five voluntary relinquishment forms, a separate one for each of her children, and the circuit court accepted them, concluding that the relinquishments were in the children's best interests and were "knowingly, intelligently and voluntarily done without any fraud und[ue] influence, [or] coercion." However, the relinquishment forms cite Chapter 48 of the West Virginia Code, not Chapter 49; as a result, they do not comport with Rule 35 because they are intended for use in circumstances where a parent relinquishes parental rights *outside* of the abuse and neglect construct. The forms do not advise the petitioner of less drastic alternatives to termination or her right to counsel and a hearing.[1]

---

[1] In relevant part, the petitioner's relinquishment forms stated:

> I have come to the conclusion after mature consideration that I am unable and will never be able to care for the above named child and that the interest of said child will be best served by permanent transfer of legal guardianship to the West Virginia [DHS] and placement for adoption.
>
> . . . Believing it to be in the best interest of said child . . . I hereby voluntarily consent to the permanent transfer of the legal and physical custody of said child to the [DHS] for the purpose of placing them for adoption.
>
> . . . I understand that I am surrendering all legal claims upon this child, . . . I understand that termination of parental rights and obligations is permanent . . . .

4

The forms expressly reference West Virginia Code § 48-22-303, contained with Article 48's "Adoption" provisions, which delineates all the information required in these particular relinquishment forms, designed for use when parental rights are surrendered *absent* abuse and neglect allegations. Therefore, these forms do not contemplate the particulars of abuse and neglect proceedings such as rights to counsel and a hearing, the least restrictive disposition, etc., as outlined in Rule 35. *See e.g.*, *In re Tessla N.M.*, 211 W. Va. 334, 338, 566 S.E.2d 221, 225 (2002) ("Parents may be in an extrajudicial setting when they choose to terminate their rights. For instance, a parent may choose to terminate his or her rights when he or she is in a DHHR office or when he or she is involved in a private adoption proceeding.").

The deficiency of the circuit court's inquiry and the relinquishment forms is best demonstrated in the very case upon which the majority relies to support its conclusion

. . . .

I further understand that I am authorizing the West Virginia [DHS] to consent to the adoption of said child . . . .

I understand this relinquishment is a final act and may be revoked only if:

1.) I and the Department agree to its revocation prior to the entry of an adoption order;

2.) I provide by clear and convincing evidence . . . that the Relinquishment was obtained by fraud or duress; or

3.) I prove by clear and convincing evidence, prior to the entry of an adoption order, that this Relinquishment does not comply with the requirements set forth in West Virginia Code §48-22-303.

5

that the circuit court did not err when accepting the petitioner's voluntary relinquishment of her parental rights. In *In re Cesar L.*, 221 W. Va. 249, 654 S.E.2d 373 (2007), the relinquishment form signed by the respondent mother comported with Rule 35, because, among other things, it fully advised her of the consequences of relinquishment including less drastic alternatives to termination and her right to a hearing and counsel. The *Cesar L.* relinquishment form provided, in relevant part:

> 1. That I believe it is in the best interest of Cesar A[.] L[.] to remain in the custody of the West Virginia Department of Health and Human Resources;
>
> 2. I understand that I am entitled to be *represented by counsel at all proceedings.*
>
> . . . .
>
> 4. I understand that I would be entitled to call witnesses, present evidence, testify on my own behalf, and have my attorney cross-examine any witnesses called *at any hearing held in this matter;*
>
> 5. I wish to waive my right to an *adjudication and dispositional hearing* in this matter and voluntarily relinquish all my parental rights to Cesar A [.] L[.]
>
> 6. I understand the Court would consider *less drastic alternatives to termination*, such as granting a pre or post adjudicatory improvement period, returning the child into my custody or simply having custody remain with West Virginia Department of Health and Human Resources.
>
> . . . .
>
> 10. I understand by relinquishing parental rights to Cesar A[.] L[.] that it is a final disposition as towards custody and therefore I leave the Court *no less restrictive alternative* or option other than termination of my parental rights.

. . . .

13. I fully understand the meaning and consequences of executing this document.

14. I have not been induced, coerced or threatened into signing this document.

15. No promises or rewards have been offered in consideration for my execution of this document.

I hereby freely, knowingly, intelligently and voluntarily relinquish all my parental rights to Cesar A[.] L[.]

*In re Cesar L.*, 221 W. Va. at 260 n.22, 654 S.E.2d at 384 n.22 (emphasis added).

Inasmuch as the context of *Cesar L.* is inapposite to the present case, it furnishes no support for the majority. To the contrary, the majority's result runs against this precedent and, more importantly, the petitioner's constitutional procedural due process protections.

This Court has repeatedly held that the relationship between parent and child is constitutionally protected and cannot be affected without procedural due process. *See* Syl. Pt. 2, *Lindsie D.L. v. Richard W.S.*, 214 W. Va. 750, 591 S.E.2d 308 (2003) ("'In the law concerning custody of minor children, no rule is more firmly established than that the right of a natural parent to the custody of his or her infant child is paramount to that of any other person; it is a fundamental personal liberty protected and guaranteed by the Due Process Clauses of the West Virginia and United States Constitutions.' Syllabus Point 1, *In re Willis,* 157 W. Va. 225, 207 S.E.2d 129 (1973)."). A parent's fundamental liberty interest of in the care, custody, and control of his or her children is afforded due process

7

protection and is perhaps the oldest of the fundamental liberty interests recognized by the Supreme Court of the United States. *Troxel v. Granville*, 530 U.S. 57, 65 (2000).

In terms of the due process deprivation, I equate the circuit court's failure to properly inform a parent considering whether to relinquish his or her parental rights with the failure to inform a criminal defendant of the rights, options, and consequences of a guilty plea. The procedures and requirements governing the acceptance of guilty pleas are contained in Rule 11 of the *West Virginia Rules of Criminal Procedure* ("Rule 11"). *See State v. Boyce*, 230 W. Va. 725, 728, 742 S.E.2d 413, 416 (2013). The purpose of Rule 11 is to ensure that a defendant knows his rights and thereby understands the consequences of a decision to plead guilty. A defendant's decision to plead guilty to a criminal charge is a grave and personal judgment, and Rule 11 provides that a circuit court is responsible for addressing the defendant personally, in open court, to inform him of the rights he is waiving as well as the possible consequences of conviction by a guilty plea.

In the same way, nothing is more important to a parent contemplating the decision to relinquish his or her parental rights than understanding the full consequences of that decision as well as the less drastic alternatives. A circuit court's duty to ensure that proper procedures are followed is vitally important because, unlike a criminal case, this Court has never recognized a parent's claim of ineffective assistance of counsel in an abuse

and neglect civil proceeding.[2]  Rule 35 provides that a circuit court must deliver certain information and ask certain questions to determine that a parent's relinquishment is made in a knowing, voluntary and intelligent manner.  In this case, the circuit court's failure to engage in an adequate Rule 35 colloquy with the petitioner, coupled with her deficient relinquishment forms, erodes the integrity of the entire proceeding.  For these reasons, I would vacate the circuit court's order and remand this case for further proceedings.  I am authorized to state that Chief Justice Bunn joins in this dissent.

---

[2] *See e.g.*, *In re C.W.*, No. 17-0614, 2018 WL 1040378, at *3 (W. Va. Feb. 23, 2018) (memorandum decision).