# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

### January 2014 Term

**FILED**

**June 17, 2014**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 13-0695

**ALYSSHA R.,**
**Respondent Below, Petitioner**

**V.**

**NICHOLAS H.,**
**Petitioner Below, Respondent**

---

**Appeal from the Circuit Court of Mineral County**
**Honorable Phil Jordan, Judge**
**Civil Action No. 12-D-151**

**REVERSED AND REMANDED**

---

**Submitted: June 11, 2014**
**Filed: June 17, 2014**

Bruce Perrone
**Legal Aid of West Virginia**
**Charleston, West Virginia**
and
**Matthew A Jividen**
**Legal Aid of West Virginia**
**Martinsburg, West Virginia**
**Attorneys for the Petitioner**

Nicholas T. James
**James Law Firm PLLC**
**Keyser, West Virginia**
**Guardian *ad litem* for the**
**minor children**

**The Opinion of the Court was delivered PER CURIAM.**

**SYLLABUS BY THE COURT**

1.     "In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*."  Syllabus, *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004).

2.     "The Grandparent Visitation Act, W. Va. Code § 48–10–101 *et seq.* [2001], is the exclusive means through which a grandparent may seek visitation with a grandchild."  Syllabus point 1, *In re Hunter H*., 231 W. Va. 118, 744 S.E.2d 228 (2013).

3.     "A trial court, in considering a petition of a grandparent for visitation rights with a grandchild or grandchildren . . . shall give paramount consideration to the best interests of the grandchild or grandchildren involved."  Syllabus point 1, in part, *In re Nearhoof*, 178 W. Va. 359, 359 S.E.2d 587 (1987).

4.     "The Due Process Clauses of Article III, Section 10 of the Constitution of West Virginia and of the Fourteenth Amendment of the Constitution of the United States protect the fundamental right of parents to make decisions concerning the care, custody, and

i

control of their children." Syllabus point 3, *Lindsie D.L. v. Richard W.S.*, 214 W. Va. 750, 591 S.E.2d 308 (2003).

**Per Curiam:**

This is an appeal by Alyssha R.[1] (hereinafter "the Mother") from the May 30, 2013, order by the Circuit Court of Mineral County, West Virginia. In that order, the circuit court refused the Mother's petition for appeal from the March 15, 2013, final order by the Family Court of Mineral County. Through those orders, the paternal grandparents (hereinafter "grandparents") were awarded visitation with the three minor children. The Mother contends that the circuit court failed to comply with the West Virginia Grandparent Visitation Act, W. Va. Code § 48-10-101 *et seq.* (hereinafter "the Act"). Upon a thorough review of the appendix record, briefs of counsel,[2] oral arguments before this Court, and applicable precedent, this Court reverses the decision of the lower courts and remands this case for entry of an order denying grandparent visitation rights to the grandparents.

---

[1]Due to the facts of this case, we refer to the parties by their initials. *See State ex rel. W. Va. Dep't of Human Servs. v. Cheryl M.,* 177 W. Va. 688, 689 n.1, 356 S.E.2d 181, 182 n.1 (1987) ("We follow our past practice in juvenile and domestic relations cases which involve sensitive facts and do not utilize the last names of the parties.").

[2]The Father appeared in the underlying family court proceedings; however, he failed to appear in the Mother's appeal to circuit court. Despite this Court's order to participate in the current appeal, the Father, likewise, makes no appearance before this Court. Moreover, on February 11, 2014, this Court denied the grandparents' motion to intervene and additionally refused to address their motion to dismiss the instant appeal.

1

# I.

## FACTUAL AND PROCEDURAL HISTORY

The Mother and Nicholas H. (hereinafter "the Father") were married and had three minor children: K.H., C.H., and J.H. (hereinafter "the children"). On September 28, 2012, the Mother and the Father were divorced by the Family Court of Mineral County, West Virginia. In the final divorce order, the family court ordered that the parties share equal custody of the children.

On November 2, 2012, the Mother filed a formal "Notice of Relocation." However, later that same month, she moved to Tennessee prior to receiving court approval. The Father's counsel filed an objection to the relocation, and a hearing was held December 4, 2012.[3] Ultimately, the family court denied the Mother's request to relocate with the children, and the Mother returned with the children to Mineral County, West Virginia.

---

[3]The Mother testified that the move was to better her education and to insulate the children from the Father's drug addiction. Additionally, the Mother stated that the Father had been aware since September 2012 of her intention to relocate to the Georgia/Tennessee border area with the children and that he had agreed with the move. The Mother opined that the Father's current objection to the move was at the behest of his family. The Guardian *Ad Litem* testified that the Father's mother and aunt came to his office with concerns regarding the Mother's relocation. Thereafter, the Guardian *Ad Litem* attempted to contact the Father to discuss the matter, but was unsuccessful.

The Mother appealed to the circuit court on December 7, 2012, and filed a "Petition for Modification of Custody" wherein she alleged that the Father was a drug addict and subjected the children to erratic behavior and dangerous situations, thus placing the children's well-being in jeopardy. The Father's counsel filed a "Petition for Contempt and Request for Emergency Hearing" with the family court on December 13, 2012, alleging that the Mother had prevented visitation since November 1, 2012. A hearing was held on December 20, 2012. The Mother attested that she did not comply with the scheduled visitation because the Father's drug addiction had worsened, as evidenced by the Father's multiple failures when drug tested pursuant to the court's order. A "Temporary Order" was entered by the family court on December 27, 2012, which found the Mother was not in contempt and, further, ordered the Father to have no contact with the children until he passed a drug test. At the end of the hearing, the Father's counsel requested, without providing prior notice thereof, that the Father's parents be allowed visitation with the children during the pendency of the Father's lack of custody. The family court ordered that the grandparents shall have an allocation of custodial responsibility with the children every other Saturday from 9:00 a.m. to 5:00 p.m., as well as on Christmas Day from 2:00 p.m. to 6:00 p.m.[4]

---

[4]The grandparents were not present in the courtroom, and they had not filed a petition for grandparent visitation.

The Mother then appealed to the circuit court. On February 5, 2013, the circuit court remanded the case to the family court on the following basis:

> The Family Court entered its Order regarding relocation before the allegations of drug use on [the Father's] part were substantiated and the custody allocation was temporarily altered. It is unclear from the record whether [the Mother] and the minor children have returned to Mineral County and whether [the Mother] continues to desire to relocate. . . . Due to the change in circumstances since the December 4, 2012, hearing this Court **FINDS** that remanding the case for further hearing is the most appropriate course of action.

The family court scheduled a hearing on remand for February 26, 2013, to address "any unresolved issues[]" as ordered by the circuit court. The Mother filed a petition for contempt based on the Father's failure to undergo drug testing. Significantly, the Mother also accused the grandparents of allowing the Father to have contact with the children in violation of the family court's prior order. One day prior to the hearing, on February 25, 2013, the grandparents, through counsel, filed a "Petition to Intervene/Motion to Continue" alleging that depriving the children of contact with the grandparents was not in the children's best interests because the children had spent a large percentage of their lives with the grandparents. At the hearing, the Mother stated she was agreeable to the children visiting with the grandparents, but that she would prefer to control the schedule. In his report, the Guardian indicated that grandparent visitation was in the best interests of the children and recommended fourteen days in the summer and other times as agreed upon by the parties.

4

As a result of the matters argued at the hearing, the family court entered a "Final Order" on March 15, 2013. In that order, the family court denied the grandparents' motions to intervene and continue; agreed that there was a substantial change in circumstances in that the Father tested positive for opiates on multiple drug tests[5] which warranted a modification of the original parenting plan; and allocated sole custodial responsibility for the children to the Mother. Further, the court continued the previously ordered grandparent visitation arrangement of every other Saturday from 9:00 a.m. to 5:00 p.m.[6]

---

[5]The family court found that the Father had tested positive on every drug test he had taken since September 2012. It also was noted that the Father was visibly intoxicated, high, or otherwise impaired at every court hearing he had attended. Thus, the family court found that the Father's drug usage rendered him incapable of exercising custodial time with his children.

[6]After the Mother's petition for appeal to the circuit court was filed, but prior to the circuit court's entry of its order, on April 8, 2013, the children's paternal grandparents filed a "Petition for Contempt" against the Mother alleging that she had not complied with the required grandparent visitation schedule and that she had relocated without court approval. The matter was heard on July 18, 2013, by the family court and resulted in two orders issued September 4, 2013. First, in the "Order of July 18, 2013," the family court found the Mother in contempt for failing to produce the children for visitation due to her relocation and sentenced her to thirty days in jail with the opportunity to purge the contempt by presenting the children for visitation with the grandparents from July 19 to July 30, 2013, from 9:00 a.m. to 5:00 p.m. Second, in the "Final Order of August 14, 2013," the family court again found the Mother in contempt for violating the court's previous order by relocating and allowed her to purge the contempt by moving back to West Virginia's Twenty-Third Family Court Circuit until the relocation is settled. The Mother complied with the contempt orders.

The Mother appealed to the circuit court and asserted that the family court erred in granting grandparent visitation;[7] failed to follow the Mother's wishes, despite the fact she was the sole fit parent; and considered grandparent visitation without proper notice. The circuit court refused the Mother's appeal by order entered on May 30, 2013. In the refusal order, the circuit court recognized that the Mother's primary contention on appeal before it was the issue of grandparent visitation.[8] The circuit court, in its order that is the subject of this appeal, found that the family court properly granted grandparent visitation every other Saturday. The circuit court's order recognized that

> [the Father] no longer possesses any custodial or visitation rights through which the [paternal] grandparents may see their [grand]children. [The Mother] argues that because [the Father] has appeared in the custody matter, the [paternal] grandparents have no further recourse to visitation. However, this Court will not require that [the Father] defend his parents' claim, especially as he no longer possesses custodial or visitation rights of his own.

---

[7]The "Final Order" contains no findings relating to how grandparent visitation would serve the children's best interests.

[8]In the circuit court's order that is on appeal to this Court, the lower court acknowledged that

> [the Mother] requests that this Court instruct the Family Court about when a parent with sole custodial allocation can relocate. The Family Court has not ruled on [the Mother's] most recent relocation and this Court has no basis for review. Thus, this Court is not ruling on [the Mother's] claims on the relocation matter.

6

In doing so, the circuit court relied heavily on its conclusion that the Mother had agreed to grandparent visitation during the December 20, 2012, temporary hearing. In that regard, the circuit court order stated that "[d]ue to [the Mother's] consent to allow the grandparents to have visitation in the temporary hearing and her admission in her brief that she is willing to let the children visit their paternal grandparents, this Court is **REFUSING** [the Mother's] Petition for Appeal." The Mother now appeals to this Court.

## II.

## STANDARD OF REVIEW

This Court's standard of review for appeals arising from family court decisions is, generally, as follows:

> In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.

Syl., *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004). Additionally, this case requires analysis of a statute. In this regard, we specifically have held that "[i]nterpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review." Syl. pt. 1, *Appalachian Power Co. v. State Tax Dep't of W. Va.*, 195 W. Va. 573, 466 S.E.2d 424 (1995). Mindful of these guidelines, we will consider the arguments set forth by the parties.

7

## DISCUSSION

On appeal to this Court, the Mother asserts that the circuit court erred in refusing her petition for appeal. While the Mother sets forth various assignments of error,[9] the resolution of this case is controlled by the West Virginia Grandparent Visitation Act, § 48-10-101 *et seq.* In this regard, the Mother argues that, without a proper petition for grandparent visitation, the family court acted outside of its jurisdiction in awarding such visitation. Ultimately, the Guardian agrees with the Mother. The Guardian asserts that the family court had jurisdiction to award visitation; however, the Guardian agrees with the Mother that the visitation unduly interfered with her relationship with her children. Because we determine that the grandparents lacked standing to petition for grandparent visitation, we reverse the lower courts' decisions that awarded visitation with the minor children to the paternal grandparents and remand for entry of an order denying grandparent visitation.

We recently reiterated that "[t]he Grandparent Visitation Act, W. Va. Code § 48–10–101 *et seq.* [2001], is the exclusive means through which a grandparent may seek visitation with a grandchild." Syl. pt. 1, *In re Hunter H.*, 231 W. Va. 118, 744 S.E.2d 228 (2013). *See also* W. Va. Code § 48-10-102 (2001) (Repl. Vol. 2009) ("It is the express intent

---

[9]Before this Court, the Mother sets forth several assignments of error. The manner in which we decide this case disposes of our need to address the other issues asserted in this appeal.

of the Legislature that the provisions for grandparent visitation that are set forth in this article are exclusive.").

Procedurally, a person wishing to invoke the visitation afforded under the Act must do so through the filing of a motion or a petition. *See* W. Va. Code § 48-10-301 (2006) (Repl. Vol. 2009) ("A grandparent of a child residing in this state may, *by motion or petition*, make application to the circuit court or family court of the county in which that child resides for an order granting visitation with his or her grandchild. (emphasis added)). The requirement for the filing of a motion is addressed further in W. Va. Code § 48-10-401 (2009) (Repl. Vol. 2009):

> (a) The provisions of this section apply to any pending actions for divorce, custody, legal separation, annulment or establishment of paternity.
>
> (b) After the commencement of the action, a grandparent seeking visitation with his or her grandchild may, *by motion*, apply to the family court for an order granting visitation. A grandparent moving for an order of visitation will not be afforded party status, but may be called as a witness by the court, and will be subject to cross-examination by the parties.

(Emphasis added).

In a case of this nature, the lower court must determine that the requirements of the statute have been met, *i.e.*, whether the grandparents meet the criteria necessary to invoke the protections of the statute. *See generally Mary Jean H. v. Pamela Kay R.*, 198

9

W. Va. 690, 482 S.E.2d 675 (1996) (per curiam) (discussing previous version of grandparent visitation statute). In the presently pending appeal, the grandparents made no motion or petition requesting grandparent visitation.[10] In the absence of a motion or petition for grandparent visitation, the family court exceeded its authority when it awarded visitation with the minor children to the grandparents. Further, the circuit court continued the family court's legal error when it determined that the Mother's acquiescence to visitation waived the statutory requirement for a motion or petition by the grandparents.

Because there is a currently stayed grandparent visitation proceeding before the family court,[11] we not that assuming, *arguendo*, there had been a proper petition or motion in the proceedings giving rise to the case *sub judice*, the grandparents still fail to meet the standards necessary for an award of grandparent visitation. Specifically,

> [i]f a motion for grandparent visitation is filed in a pending action for divorce, custody, legal separation, annulment or establishment of paternity pursuant to section 21-401, the grandparent shall be granted visitation if a preponderance of the evidence shows that visitation is in the best interest of the child and that:
>
>> (1) The party to the divorce through which the grandparent is related to the minor child has

---

[10]Two months after entry of the final order in the family court, though, the grandparents filed a "Petition for Grandparent Visitation." The action was stayed pending resolution of the instant appeal to this Court.

[11]*See* note 10, *supra*.

10

failed to answer or otherwise appear and defend
the cause of action . . . .

W. Va. Code § 48-10-701 (2001) (Repl. Vol. 2009). In this case, the Father actually appeared and responded in the commencement of the custody case. His participation continued until the court stripped him of his custodial rights and responsibilities based upon his increased illegal drug usage, which made it impossible for him to properly care for the children. Thus, the grandparents cannot meet one of the threshold requirements of W. Va. Code § 48-10-701 because the Father, who is the party through which they are related to the minor children, answered and otherwise appeared and defended the cause of action.

Additionally, our case law supports the requirement in W. Va. Code § 48-10-701 that visitation must be in the children's best interests. "A trial court, in considering a petition of a grandparent for visitation rights with a grandchild or grandchildren . . . shall give paramount consideration to the best interests of the grandchild or grandchildren involved." Syl. pt. 1, in part, *In re Nearhoof*, 178 W. Va. 359, 359 S.E.2d 587 (1987). While the lower courts found that an award of grandparent visitation was in the best interests of the children, there was no analysis or reasoning supplied in the orders to support this finding. *See* W. Va. Code § 48-10-701 (stating best interests of children must be shown by preponderance of evidence). *See also* W. Va. Code § 48-10-501 (2006) (Repl. Vol. 2009) ("The circuit court or family court shall grant reasonable visitation to a grandparent upon a finding that visitation would be in the best interests of the child and would not substantially

11

interfere with the parent-child relationship.").  The lower courts' orders completely failed to set forth any analysis of the factors used to determine the best interests[12] of the children.  *See*

---

[12]W. Va. Code § 48-10-502 (2001) (Repl. Vol. 2009) provides the following factors to consider in determining the best interests of the children:

> (1) The age of the child;
>
> (2) The relationship between the child and the grandparent;
>
> (3) The relationship between each of the child's parents or the person with whom the child is residing and the grandparent;
>
> (4) The time which has elapsed since the child last had contact with the grandparent;
>
> (5) The effect that such visitation will have on the relationship between the child and the child's parents or the person with whom the child is residing;
>
> (6) If the parents are divorced or separated, the custody and visitation arrangement which exists between the parents with regard to the child;
>
> (7) The time available to the child and his or her parents, giving consideration to such matters as each parent's employment schedule, the child's schedule for home, school and community activities, and the child's and parents' holiday and vacation schedule;
>
> (8) The good faith of the grandparent in filing the motion or petition;
>
> (9) Any history of physical, emotional or sexual abuse or neglect being performed, procured, assisted or condoned by the

(continued...)

W. Va. Code § 48-10-801 (2001) (Repl. Vol. 2009) ("An order granting or refusing the grandparent's motion or petition for visitation must state in writing the court's findings of fact and conclusions of law.").

Because of the lower courts' desire to preserve grandparent visitation, the Mother was precluded from relocating with the minor children out of state.[13] While the

---

[12](...continued)
grandparent;

(10) Whether the child has, in the past, resided with the grandparent for a significant period or periods of time, with or without the child's parent or parents;

(11) Whether the grandparent has, in the past, been a significant caretaker for the child, regardless of whether the child resided inside or outside of the grandparent's residence;

(12) The preference of the parents with regard to the requested visitation; and

(13) Any other factor relevant to the best interests of the child.

[13]In fact, the family court has issued two contempt orders against the Mother as a result of her relocation and her failure to produce the children to the grandparents for visitation. The family court allowed the Mother to purge herself of the contempt determinations by presenting the children to the grandparents for twelve consecutive days of visitation. The Mother was forced to move back from Georgia, and she, additionally, was required to remain in the three-county area encompassed in the family court's jurisdiction. In doing so, the Mother was forced to quit her employment, remove the eldest child from school, and discontinue the youngest child's successful medical treatments. The focus of the contempt orders was to preserve the children's visitation with the grandparents-visitation that was improper from the outset. As such, the contempt proceedings cannot be upheld. Syl.
(continued...)

13

Mother was amenable to the children having visitation time with the grandparents, the

Mother desired control of the schedule. The applicable statute for relocation of a parent

supplies:

> (b) Unless otherwise ordered by the court, a parent who has responsibility under a parenting plan who changes, or intends to change, residences for more than ninety days must give a minimum of sixty days' advance notice, or the most notice practicable under the circumstances, to any other parent with responsibility under the same parenting plan. . . .

W. Va. Code § 48-9-403(b) (2005) (Repl. Vol. 2009). After the Father was stripped of his

custodial responsibilities, the Mother relocated to Georgia. Because there was no "other

---

[13](...continued)
pt. 3, in part, *State ex rel. Askin v. Dostert*, 170 W. Va. 562, 295 S.E.2d 271 (1982) ("Where, however, the court or judge lacks jurisdiction, or is without power or authority to render the order, refusal to comply with such order may not be punished as contempt.").

Nevertheless, this Court is concerned by the improper use of contempt orders to curtail the Mother's constitutional rights in regards to her children. Moreover, we are extremely frustrated by the seeming inequities afforded the Mother as a party to the action and the leniency accorded to the grandparents, who were not even parties to the case *sub judice*. The family court was quick to hold the Mother in contempt, but failed to hold the grandparents to the same standards. The Mother produced evidence to the family court that the grandparents allowed the Father to have contact with the children during their visitation times, despite the lower court's ruling that the grandparents were to adhere to the conditions set forth in the order. It is a misdemeanor offense for the grandparents to allow contact between the children and their Father, who had been precluded visitation rights. *See* W. Va. Code § 48-10-1201 (2001) (Repl. Vol. 2009) ("Any grandparent who knowingly allows contact between a minor grandchild and a parent or other person who has been precluded visitation rights with the child by court order is guilty of a misdemeanor and, upon conviction thereof, shall be confined in the county or regional jail not more than thirty days or fined not less than one hundred dollars nor more than one thousand dollars."). The family court utterly failed to address the alleged failure of the grandparents to follow the court's directive.

14

parent with responsibility under the same parenting plan," the Mother was not required to give the notice required by W. Va. Code § 48-9-403(b). Thus, the lower courts erred in applying the relocation statute to the Mother and restricting her ability to move with the children as she saw fit.

Finally, while all of the procedural and substantive errors in the lower courts' proceedings are concerning, none is more troubling than the ultimate result of those errors: the trampling of a fit mother's parental rights. The right of a parent to make decisions concerning the care, custody, and control of her children is among the most cherished fundamental liberty interests. *See Troxel v. Granville*, 530 U.S. 57, 67, 120 S. Ct. 2054, 147 L.Ed.2d 49 (2000) ("The liberty interest at issue in this case – the interest of parents in the care, custody and control of their children – is perhaps the oldest of the fundamental liberty interests recognized by this Court."). This Court also has recognized a parent's constitutional rights: "The Due Process Clauses of Article III, Section 10 of the Constitution of West Virginia and of the Fourteenth Amendment of the Constitution of the United States protect the fundamental right of parents to make decisions concerning the care, custody, and control of their children." Syl. pt. 3, *Lindsie D.L. v. Richard W.S.*, 214 W. Va. 750, 591 S.E.2d 308 (2003).

Recently, this Court restated its long-standing principle that considerable weight must be afforded to a fit parent's decision-making authority, which precludes a court from intervening in a fit parent's exercise of parental discretion even on the basis of the child's best interests. *Hunter H.*, 231 W. Va. 118, 744 S.E.2d 228. In *Brandon L.*, this Court held that courts must defer to the "preferences of the parent where there had been no showing of unfitness with regard to that parent." *State ex rel. Brandon L. v. Moats*, 209 W. Va. 752, 755, 551 S.E.2d 674, 677 (2001). Further, the Act explicitly states that "[t]he circuit court or family court shall grant reasonable visitation to a grandparent upon a finding that visitation would be in the best interests of the child and would not substantially interfere with the parent-child relationship." W. Va. Code § 48-10-501 (2006) (Repl. Vol. 2009).

This Court has observed that the *Troxel* case "instructs that a judicial determination regarding whether grandparent visitation rights are appropriate may not be premised solely on the best interests of the child analysis." *Cathy L.M. v. Mark Brent R.*, 217 W. Va. 319, 327-28, 617 S.E.2d 866, 874-75 (2005) (per curiam). Rather, the evaluating court "must also consider and give significant weight to the parents' preference, thus precluding a court from intervening in a fit parent's decision making on a best interests basis." *Id.* In *Troxel*, the United States Supreme Court found that a statute violated the substantive due process rights of a parent by allowing visitation rights, over parental objection, even where such visitation served the best interests of the child. *Troxel*, 530 U.S.

16

at 61, 120 S. Ct. at __, 147 L.Ed.2d 49. The court ruled that the statute therein unconstitutionally infringed upon a parent's rights by failing to accord appropriate deference to a parent's decision. Like the mother in *Troxel*, the Mother in the case before this Court did not oppose visitation altogether. Rather, she wanted to retain control over her schedule and that of her children. Consent to visitation is not a blanket waiver to a parent's constitutionally protected interest to make decisions about his or her children. As it is conceded that the Mother is a fit parent, she has a constitutionally protected right to make decisions regarding the care, custody, and control of her children. Under the facts of this case, those rights include the ability to make unfettered decisions regarding the location of their residence when no other parent has custodial rights to the subject children.

## IV.

## CONCLUSION

For the foregoing reasons, we reverse the May 30, 2013, order by the Circuit Court of Mineral County, West Virginia, which refused the Mother's petition for appeal from the March 15, 2013, final order by the Family Court of Mineral County. This case is further

17

remanded for entry of an order denying grandparent visitation rights to the grandparents. Finally, in recognition of the restrictions that have been imposed upon the Mother as a result of the lower courts' improper rulings, we direct the Clerk of the Court to issue the mandate in this case contemporaneously with this opinion.

Reversed and Remanded.