IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2021 Term

_____

No. 20-0185
_____

FILED
**May 14, 2021**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

IN RE ADOPTION OF J.S. AND K.S.

_____

Appeal from the Circuit Court of Webster County
Honorable Jack Alsop, Judge
Case Nos. 17-A-5 & 17-A-6

REVERSED AND REMANDED WITH DIRECTIONS
_____

Submitted: March 24, 2021
Filed:  May 14, 2021

G. Wayne Van Bibber, Esq.
Law Offices of G. Wayne Van Bibber
& Assoc., PLLC
Hurricane, West Virginia
Counsel for Petitioner, C.R.

Mary Elizabeth Snead, Esq.
Law Firm of M. E. Snead, PLLC
Webster Springs, West Virginia
Guardian Ad Litem for the Minor
Children

JUSTICE WOOTON delivered the Opinion of the Court.

# SYLLABUS BY THE COURT

1.      "A constitutional issue that was not properly preserved at the trial court level may, in the discretion of this Court, be addressed on appeal when the constitutional issue is the controlling issue in the resolution of the case."  Syl. Pt. 2, *Louk v. Cormier*, 218 W. Va. 81, 622 S.E.2d 788 (2005).

2.      "'[This Court] may, sua sponte, in the interest of justice, notice plain error.' Syl. Pt. 1, in part, *State v. Myers*, 204 W. Va. 449, 513 S.E.2d 676 (1998)."  Syl. Pt. 1, *Cartwright v. McComas*, 223 W. Va. 161, 672 S.E.2d 297 (2008).

3.      "The Due Process Clauses of Article III, Section 10 of the Constitution of West Virginia and of the Fourteenth Amendment of the Constitution of the United States protect the fundamental right of parents to make decisions concerning the care, custody, and control of their children."  Syl. Pt. 3, *Lindsie D.L. v. Richard W.S.*, 214 W. Va. 750, 591 S.E.2d 308 (2003).

4.      "There is a presumption that fit parents act in the best interests of their children."  Syl. Pt. 4, *Lindsie D.L. v. Richard W.S.*, 214 W. Va. 750, 591 S.E.2d 308 (2003).

i

5.　　　　Unless otherwise permitted by law, where a circuit court grants a petition for adoption of a child pursuant to the procedures set forth in West Virginia Code §§ 48-22-701 to -704 (2015), the court may not include any provision in the final order of adoption that would limit, restrict, or otherwise interfere with the adoptive parent's right to make decisions concerning the care, custody, and control of the child.

**WOOTON, Justice:**

This is an appeal filed by C.R., adoptive mother of J.S. and K.S., from an order of the Circuit Court of Webster County which denied C.R.'s motion to modify a provision in the final adoption orders prohibiting visitation between the children and R.R., C.R.'s former husband.[1]  Because we conclude that this provision in the final adoption orders was an impermissible judicial restriction on C.R.'s parental rights, and therefore void, we reverse the circuit court's order denying the motion to modify and remand with instructions for the court to enter amended adoption orders consistent with this opinion.

## I.  Facts and Procedural Background

The genesis of the instant case was an abuse and neglect proceeding filed by the West Virginia Department of Health and Human Resources ("DHHR") against the natural parents of J.S., now eight years of age, and K.S., now seven years of age.[2]  On October 24, 2016, the parents' parental and custodial rights were terminated.  Both parents appealed, and on October 23, 2017, this Court affirmed the termination of their rights.  *In re J.S. and K.C.*,[3] Nos. 17-0331 & 17-0340, 2017 WL 4772938 (W. Va. Oct. 24, 2016)

---

[1] Consistent with our practice in cases involving sensitive matters, we refer to the children and all parties by their respective initials.  *See*, *e.g.*, *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] This was the second such proceeding filed against the biological parents.  In the initial proceeding, the children were placed with C.R. and R.R. until they were reunified with the parents.

[3] The appendix record does not disclose why K.S. was then known as K.C.

1

(memorandum decision). Both prior to and during the abuse and neglect proceedings J.S. and K.S. were in the custody of petitioner C.R., their biological aunt, and C.R.'s husband, R.R., and the permanency plan was for them to adopt both children in the event of termination. In this regard, the children had lived with C.R. and R.R. for most of their lives and had a strong bond with both.

At some point during the permanency planning/pre-adoption phase of the abuse and neglect proceedings, evidence arose showing beyond doubt that R.R. was a user of illicit drugs. Although DHHR had earlier consented to the children's adoption by C.R. and R.R., it filed a motion to withdraw its consent as to R.R. By order dated July 19, 2018, the circuit court granted DHHR's motion, concluding that "[i]t is patently unfair to subject the children to [R.R.'s] drug related conduct and to let them be in his custody when the children's parents' rights were terminated for the same reasons." The court also noted that when questioned under oath about his drug use during an earlier court hearing, R.R. had not been truthful in his denials.

The guardian ad litem, who appeared in these appellate proceedings in opposition to the relief sought by C.R.,[4] acknowledges that C.R. was "devastated and unaware of R.R.'s behavior, kicked him out of the home and immediately filed for

---

[4] *See infra* note 7, discussing the role of the guardian ad litem in the adoption proceedings below and in this appeal.

divorce."[5]  Thereafter, C.R. filed an amended petition seeking to adopt J.S. and K.S. as a single parent, and on July 2, 2018, the circuit court signed identical orders granting the adoptions.[6]  However, notwithstanding the unequivocal declaration of C.R.'s parental rights contained in each order, *see* discussion *infra*, each order provided in the final paragraph that C.R. was "enjoined and restrained from permitting any contact of any nature by the child with [her] ex-husband [R.R.]."

On October 14, 2019, C.R. filed a motion to modify the injunction contained in the adoption orders, detailing the steps R.R. had taken to overcome his drug addiction: in April, 2019, he completed a seven-day in-patient detoxification program at Highland Hospital; following his discharge from Highland Hospital he completed a twenty-eight-day in-house rehabilitation program at St. Francis Hospital; he has been clean since discharge from St. Francis; and he attends at least ten addiction recovery meetings a week and leads two of those meetings, which are described as "Christ based."

---

[5] According to the transcript of proceedings on C.R.'s motion for modification, the divorce was granted in or about March, 2018.

[6] It is unclear why the order granting DHHR's motion to withdraw consent as to R.R.'s adoption of the children was entered more than two weeks after the orders granting C.R.'s adoption of the children.

A hearing on C.R.'s motion was held on January 2, 2020, in which C.R. testified in support of the averments in the motion and submitted documentation of R.R.'s consistently clean drug screens and his participation in, and leadership of, numerous peer-led recovery group meetings. C.R. also offered the testimony of both R.R. and Thomas Eagle, R.R.'s mentor and fellow participant in the Reach Up Recovery Ministry, that R.R. had stayed clean, had been a positive influence for others in recovery, and had changed his life in many positive ways.

At the conclusion of the hearing, C.R.'s counsel summed up the evidence in support of the motion for modification. The prosecuting attorney, who appeared as counsel for DHHR, objected on the ground that R.R. had not admitted to his drug problem during the pendency of the adoption proceedings and had taken no steps at that time to address his addiction issues. The guardian ad litem,[7] when asked by the court to take a position, stated

---

[7] The guardian ad litem, who had represented the interests of the children in the underlying abuse and neglect proceedings against the biological parents, represented to this Court that she had not been noticed on C.R.'s motion for modification because she had not been a participant in the adoption proceedings. In this regard, the July 2, 2018, orders of adoption both noted that the circuit court, "perceiving no necessity for the appointment of a guardian ad litem for the infant . . . proceeded to the hearing of [C.R.'s amended adoption petition]." On January 2, 2020, the guardian ad litem was in the courtroom on another matter when C.R.'s motion for modification came on for hearing, and she participated in the hearing. Thereafter, she filed a brief in opposition to C.R.'s petition for appeal and made oral argument in this Court, despite having never been appointed to represent the interests of the children in this matter. We appreciate the guardian's zealous advocacy on behalf of J.S. and K.S. in this matter, which she considered to be an "action ancillary to the abuse and neglect proceeding including proceedings to address the disruption of a permanent placement[.]" *See* W. Va. R. Proc. for Child Abuse and Neglect Proceedings 18a(b) and Appendix A, Guidelines for Children's Guardians ad Litem in Child Abuse and

that "I will leave it to the discretion of the Court, but I – I am extremely hesitant to recommend contact." However, she also noted that "the children did always have a strong bond with [R.R.] . . . . And I know it was heartbreaking for the children to be separated from him."

On January 23, 2020, the circuit court entered an order denying the motion for modification, finding that R.R. had not accepted responsibility for his previous actions and his previous false swearing, and further finding that "[a]llowing [R.R.] contact with the children is contrary to the best interest of the children[.]" This appeal followed.

## II. Standard of Review

Although the parties to this appeal[8] have extensively briefed and argued the question of whether the circuit court abused its discretion in denying C.R.'s motion for modification of a provision in the adoption orders which enjoins contact between R.R. and the adopted children, this Court has determined that the dispositive issue in this case is whether the court had the statutory authority to order such a limitation on C.R.'s rights as an adoptive parent. *See* text *infra*. This is a question of law which has a constitutional dimension, requiring us to examine both West Virginia Code §§ 48-22-101 to -903 (2015),

---

Neglect Cases at E(3). In light of our disposition of this case, we express no opinion as to whether Rule 18a(b) and Appendix A can support this interpretation.

[8] DHHR did not file a brief in this matter and did not appear, in person or by counsel, at oral argument.

which governs adoption proceedings in this State, as well as article III, section 10 of the West Virginia Constitution.  We have held that:

> [W]here, as here, the question before the circuit court involves the interpretation of the applicable law and governing statutes, our review is plenary.  'Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review.' Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995)*.*

*In re Adoption of Jon L.*, 218 W. Va. 489, 492, 625 S.E.2d 251, 254 (2005); *see also Murrell B. v. Clarence R.*, 242 W. Va. 358, 364, 836 S.E.2d 9, 15 (2019); *State v. Haines*, 221 W. Va. 235, 237, 654 S.E.2d 359, 361 (2007).

### III.  Discussion

As set forth above, this Court has determined that the dispositive issue in this case is whether the circuit court had the statutory authority to limit C.R.'s rights as an adoptive parent, a question which has a constitutional dimension in that it implicates "the fundamental right of a parent to make decisions concerning the care, custody, and control of his or her children." *In re K.H.*, 235 W. Va. 254, 263, 773 S.E.2d 20, 29 (2015) (citing *Troxel v. Granville*, 530 U.S. 57 (2000)).  Although neither party has squarely addressed this issue,  this Court has held that "[a] constitutional issue that was not properly preserved at the trial court level may, in the discretion of this Court, be addressed on appeal when the constitutional issue is the controlling issue in the resolution of the case."  Syl. Pt. 2, *Louk v. Cormier*, 218 W. Va. 81, 622 S.E.2d 788 (2005).  Further, "'[t]his Court] may, sua

6

*sponte*, in the interests of justice, notice plain error.' Syl. Pt. 1, in part, *State v. Myers*, 204 W. Va. 449, 513 S.E.2d 676 (1998)." Syl. Pt. 1, *Cartwright v. McComas*, 223 W. Va. 161, 672 S.E.2d 297 (2008). For the reasons set forth herein, we conclude that the instant case falls within these limited exceptions to our usual rules of waiver and/or forfeiture.

The procedures for adoption of minor children in this State are set forth in West Virginia Code §§ 48-22-701 to -704 (2015), which together provide a detailed roadmap for reaching a goal of singular importance to this Court: permanent placement in secure, loving homes for every child who cannot, for any number of reasons, find that security and love with his or her biological parents. To this end, Rule 43 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings provides that "permanent placement of each child shall be achieved within twelve (12) months of the final disposition order, unless the court specifically finds on the record extraordinary reasons sufficient to justify the delay." We have held that:

> The . . . period provided in Rule 43 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

Syl. Pt. 6, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).[9] This urgency follows from our longstanding recognition that "a child deserves resolution and permanency in his or her life." *State ex rel. Amy M. v. Kaufman*, 196 W. Va. 251, 260, 470 S.E.2d 205, 214 (1996).

In all cases where the permanency plan is adoption, "[w]hen the cause has matured for hearing but not sooner than six months after the child has resided continuously in the home of the petitioner [seeking adoption,]" W. Va. Code § 48-22-701(a), the initial duty of the circuit court is to "cause a discreet inquiry to be made to determine whether such child is a proper subject for adoption and whether the home of the petitioner or petitioners is a suitable home for such child." *See id*. § 48-22-701(b).[10] The purpose of the inquiry is to furnish a basis on which the court can determine whether "the petitioner is . . . of good moral character, and of respectable standing in the community, and [is] able properly to maintain and educate the child sought to be adopted, and that the best interests of the child

---

[9] At the time *Cecil T.* was decided, the time limit set forth in Rule 43 was eighteen months. By Order entered January 3, 2012, this Court amended the Rule to reduce the limit to twelve months.

[10] West Virginia Code § 48-22-701(b) requires that a report be made detailing the results of the inquiry, which

> shall include, but not be limited to, the following: (1) A description of the family members, including medical and employment histories; (2) A physical description of the home and surroundings; (3) A description of the adjustment of the child and family; (4) Personal references; and (5) Other information deemed necessary by the court, which may include a criminal background investigation.

would be promoted by such adoption[.]" *See id*. § 48-22-701(d). Having once made these findings, the court

> shall make an order reciting the facts proved and the name by which the child shall thereafter be known, and declaring and adjudging that from the date of such order, the rights, duties, privileges and relations, theretofore existing between the child and those persons previously entitled to parental rights, shall be in all respects at an end, and that the rights, duties, privileges and relations between the child and his or her parent or parents by adoption shall thenceforth in all respects be the same, including the rights of inheritance, as if the child had been born to such adopting parent or parents in lawful wedlock, except only as otherwise provided in this article[.]

*See id*. In the instant case, the circuit court made all of the necessary findings and set forth all of the statutory conclusions in the orders of adoption. The court then went on, however, to include a restriction on C.R.'s right to allow the children to see R.R. We find that this restriction was void ab initio,[11] as the court had no authority to impose it.

First, from the moment an adoption order is entered, an adoptive parent has the same rights "as if the child had been born to" him or her. In that regard, we have held that "[t]he Due Process Clauses of Article III, Section 10 of the Constitution of West Virginia and of the Fourteenth Amendment of the Constitution of the United States protect the fundamental right of parents to make decisions concerning the care, custody, and control of their children." Syl. Pt. 3, *Lindsie D.L. v. Richard W.S.*, 214 W. Va. 750, 591

---

[11] The fact that the restriction on C.R.'s rights was void, rather than voidable, is significant to our analysis. *See* text *infra*.

9

S.E.2d 308 (2003); *see also In re Antonio R.A.*, 228 W. Va. 380, 388, 719 S.E.2d 850, 858 (2011) ("the right of a natural parent to the custody of his or her infant child . . . is a fundamental personal liberty protected and guaranteed by the Due Process Clauses of the West Virginia and United States Constitutions.") (citation and footnote omitted); *Alyssha R. v. Nicholas H.*, 233 W. Va. 746, 753, 760 S.E.2d 560, 567 (2014) ("The right of a parent to make decisions concerning the care, custody, and control of her children is among the most cherished fundamental liberty interests.") (citation omitted); *Hammack v. Wise*, 158 W. Va. 343, 348, 211 S.E.2d 118, 121–22 (1975) ("One's right to conceive and to raise his children has found protection in the Due Process Clause of the Fourteenth Amendment and also on the Equal Protection Clause thereof, as well as the comparable clauses of the West Virginia Constitution.") (citations omitted). Although parental rights must sometimes yield in situations where they are in conflict with the best interests of the child,[12] no such situation is presented here; the circuit court specifically found in the adoption orders for J.S. and K.S. that "the best interests of the said [child] will be promoted by such adoption[.]" Additionally, "[t]here is a presumption that fit parents act in the best interests of their children." *Lindsie*, 214 W. Va. at 751, 591 S.E.2d at 309, Syl. Pt. 4. In this regard, there is no evidence whatsoever in the record of this case that C.R., who is acknowledged

---

[12] "'[T]he best interests of the child is the polar star by which decisions must be made which affect children.' *Michael K.T. v. Tina L.T.*, 182 W.Va. 399, 405, 387 S.E.2d 866, 872 (1989)." *Kristopher O. v. Mazzone*, 227 W. Va. 184, 192, 706 S.E.2d 381, 389 (2011).

10

by all parties to be a fit parent, has ever acted in a way that was not in the best interests of J.S. and K.S.[13]

Second, West Virginia Code § 48-22-701(d) specifically provides that an adoptive parent's rights "shall thenceforth in all respects be the same . . . as if the child had been born to such adopting parent . . . except *only as otherwise provided in this article[.]*" (Emphasis added). In this regard, our review of article 48, Chapter 22 of the Code reveals no authority whatsoever for the circuit court to impose a restriction on an adoptive parent's right to make decisions involving the children's relationships with other individuals.[14] Indeed, such an action by the court would directly, and negatively, impact "the creation of new adoptive relationships, which breeds certainty for adopted children and their adoptive parents, alike, in their new adoptive relationship." *In re Cathy L.(R.)M. v. Brent R.*, 217 W. Va. 319, 328, 617 S.E.2d 866, 875 (2005) (Davis, J., concurring).

It is well established that in an area of law created, defined, and regulated by the Legislature, absent any ambiguity in the statutory language, the authority of the

---

[13] In this regard, it is noteworthy that C.R. sought guidance from the children's therapist about the possibility of allowing them to have contact with R.R., *before* filing her petition for modification.

[14] West Virginia Code § 48-22-704 does enable a circuit court to hear a petition to enforce a pre-existing agreement for visitation or communication with an adopted child, a situation not presented in the instant case. *Murrell B.*, 242 W. Va. at 367, 836 S.E.2d at 18 (holding that unless such agreement is memorialized in order of adoption, it is not enforceable).

11

judiciary is limited to that specifically granted in the statute. *See, e.g., The John A. Sheppard Mem'l Ecological Rsrv., Inc. v. Fanning*, 242 W. Va. 459, 464, 836 S.E.2d 426, 431 (2019) (no language in relevant statute supports existence of derivative action by a director against a nonprofit corporation); *State ex rel. C.H. v. Faircloth*, 240 W. Va. 729, 745, 815 S.E.2d 540, 556 (2018) (findings and conclusions in abuse and neglect case must "demonstrat[e] exercise of clear-cut statutory authority.") (citing *In re J.G., II*, 240 W. Va. 194, 204, 809 S.E.2d 453, 463 (2018)); *State ex rel. Ray v. Canady*, 208 W. Va. 182, 184, 539 S.E.2d 442, 444 (2000) (circuit court's award of temporary alimony proper because there is clear statutory authority therefor); *State ex rel. Riffle v. Ranson*, 195 W. Va. 121, 129, 464 S.E.2d 763, 771 (1995) (once Legislature enacted statute governing transfer of cases from one circuit court to another, "any other transfer . . . that is not explicitly permitted by the statute is impermissible and forbidden."); *Sally-Mike Props. v. Yokum*, 179 W. Va. 48, 50, 365 S.E.2d 246, 248 (1986) (circuit court without authority to award attorney fees absent express statutory or contractual authority).

Accordingly, we hold that unless otherwise permitted by law, where a circuit court grants a petition for adoption of a child pursuant to the procedures set forth in West Virginia Code §§ 48-22-701 to -704 (2015), the court may not include any provision in the final order of adoption that would limit, restrict, or otherwise interfere with the adoptive

12

parent's right to make decisions concerning the care, custody, and control of the child.[15] In the instant case, where C.R. had been judicially determined to be a fit parent and the adoption had been judicially determined to be in the best interests of J.S. and K.S., the circuit court's attempt to restrict C.R.'s parental rights denied her due process of law.

We are not persuaded by the argument of the guardian ad litem that C.R.'s failure to appeal after entry of the adoption orders forecloses our consideration of this matter. The restriction contained in the circuit court's order was void, not simply voidable, as the court "acted in a manner inconsistent with due process of law." *Amoruso v. Com. and Indus. Ins. Co.,* 241 W. Va. 517, 522 n.9, 826 S.E.2d 642, 647 n.9 (2019) (citation omitted). It was long ago established in our jurisprudence that a void order can be collaterally attacked because the law "holds it for naught, disregards or ignores it[.]" *State ex rel. Browning v. Tucker*, 142 W. Va. 830, 838, 98 S.E.2d 740, 745 (1957). Where, as here, the result of the circuit court's error was "the trampling of a fit mother's parental rights[,]" *Alyssha R.*, 233 W. Va. at 753, 760 S.E.2d at 567, this Court "may, sua sponte,

---

[15] Our holding today does not affect a circuit court's right to enjoin any parent whose rights have been terminated from contacting the child. Further, the court retains the right to enforce any grandparent visitation order that survives adoption pursuant to West Virginia Code § 48-10-902 (2015); any sibling visitation order required by our holding in Syllabus Point 4 of *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991); and/or any visitation agreement that survives adoption pursuant to our holding in Syllabus Point 5 of *Murrell B. v. Clarence R.*, 242 W. Va. 358, 371, 836 S.E.2d 9, 22 (2019), in post-adoption enforcement proceedings brought by an affected party.

in the interest of justice, notice plain error." *Myers*, 204 W. Va. at 453, 513 S.E.2d at 680, Syl. Pt. 1, in part.

## IV.  Conclusion

For the foregoing reasons, the circuit court's order of January 23, 2020, is reversed.  This case is remanded with directions that the circuit court enter amended orders in Case Nos. 17-A-5, Adoption of [J.L.S.], and 17-A-6, Adoption of [K.R.S.], *nunc pro tunc* to July 2, 2018, eliminating the final sentence in each order which purports to enjoin and restrain C.R. "from permitting any contact of any nature by the child with the Petitioner's ex-husband [R.R.]."

Reversed and Remanded
With Directions.
