**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **A.T., B.T., and N.T.**

**No. 24-241** (Randolph County CC-42-2017-JA-32, CC-42-2017-JA-33, and CC-42-2017-JA-34)

**MEMORANDUM DECISION**

Petitioner Mother J.T.-1 and Petitioner Father J.T.-2[1] appeal the Circuit Court of Randolph County's April 9, 2024, order dismissing them from the proceedings, arguing that the circuit court erred in dismissing them.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

Because the resolution of this appeal turns on a narrow issue, it is unnecessary to belabor the procedural history below. After the DHS filed a petition[3] in May 2017 alleging abuse and neglect by the petitioners, the circuit court entered a final dispositional order in April 2018 in which it found that "the most appropriate disposition in this matter is guardianship of the . . . children." The court then transferred legal guardianship of the children to their maternal grandmother and ruled that "[t]his shall be a fully subsidized, permanent legal guardianship," although it further ruled that "[i]n order to facilitate [the] . . . guardianship, it shall be necessary that the children remain in the temporary custody of the [DHS]" so that necessary paperwork could be completed. Accordingly, the court permitted temporary custody of the children to continue with

---

[1] The petitioners appear by counsel Julie N. Garvin. The West Virginia Department of Human Services appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Katica Ribel. Because a new Attorney General took office while this appeal was pending, his name has been substituted as counsel. Counsel Heather M. Weese appears as the children's guardian ad litem.

[2] Additionally, pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e). Because the petitioners share the same initials, we refer to them as J.T.-1 and J.T.-2.

[3] The petition concerned additional children who are not at issue on appeal.

the DHS. In its April 27, 2018, final dispositional order, the court made no reference to West Virginia Code § 49-4-604(c)(5). However, in the order currently on appeal, the court indicated that it "previously transferred all [the petitioners'] custodial rights to the children to the [DHS], pursuant to West Virginia Code § 49-4-604(c)(5), as an alternative disposition to termination of their parental rights." No parties appealed from the final dispositional order.

Thereafter, the petitioners and respondents filed a series of motions seeking to modify either the prior disposition or the children's guardianship, none of which resulted in a change to the children's permanent placement. In October 2023, the children's legal guardian passed away, at which time the children were moved to foster care as there was a question as to the grandmother's wishes regarding who would succeed her as the children's caretaker. The guardian ad litem therefore filed a motion to reopen the matter to determine who should exercise custody of the children, though the petitioners made it clear that they were not seeking placement of the children. However, the petitioners expressed a desire to see the results of home studies of the potential custodians' homes so that they could make a recommendation on the children's permanent placement.

At a hearing in April 2024, the guardian ad litem moved to dismiss the petitioners from the proceedings. The court granted the motion, finding that the petitioners lacked standing to participate in the proceedings because of the transfer of their custodial rights. Accordingly, the court dismissed the petitioners from the proceedings. It is from the court's order dismissing them as parties that the petitioners appeal.[4]

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioners argue that the circuit court erred in dismissing them from the proceedings because, as the children's parents, they were entitled to be heard. We agree, given that parents are statutorily entitled to participate. *See* W. Va. Code § 49-4-601(h) (affording a meaningful opportunity to be heard "in any proceeding pursuant to this article [to] the party or parties having . . . parental rights and responsibilities to the child"). As we recently explained,

> [p]ursuant to the Rules of Procedure for [Child] Abuse and Neglect Proceedings, only parents whose parental rights are terminated are excluded from participating in the permanent placement review hearings that follow disposition and that are required until permanency for the child is achieved. *See* W. Va. R. Proc. [Child] Abuse and Neglect P. 39(c) (requiring notice of time and place of permanent placement review conference be given "to counsel of record, and all other person entitled to notice and the right to be heard" except for "a party whose parental rights have been terminated by the final disposition order [and] his or her attorney").

*In re H.M.*, 251 W. Va. 333, --, 912 S.E.2d 885, 892 (2025) (footnote omitted). As such, it is clear that the circuit court erred in dismissing the petitioners.

---

[4] The respondents indicate that the permanency plan for the children is a legal guardianship in their current placement.

Notwithstanding this clear error, we must conclude, under the limited circumstances of this appeal, that the court's dismissal of the petitioners does not warrant relief because it amounts to harmless error. As we have explained, "[m]ost errors, including constitutional ones are subject to harmless error analysis." *In re S.P.-W.*, No. 18-0884, 2019 WL 1767033, *2 n.5 (W. Va. April 19, 2019) (memorandum decision) (quoting *State ex rel. Waldron v. Scott*, 222 W. Va. 122, 126, 663 S.E.2d 576, 580 (2008)). It is clear that, prior to their dismissal, the petitioners were permitted to participate extensively in the proceedings as the court considered the children's permanent placement options. Critically, the petitioners admitted that they were not seeking custody of the children and had no opinion as to which of the potential guardians should be awarded custody. We recognize that the petitioners indicated that they could not "be 100% sure of their position in regard to a new legal guardian for the children because of the pending home studies." However, this does not amount to reversible error because the petitioners admitted, in essence, that they had no additional information to aid the circuit court in its decision. Again, while we recognize that the petitioners were entitled to continued participation in the ongoing proceedings, it is clear that they simply wished to review the home study results and possibly provide a recommendation to the court based upon that information. In similar circumstances, we have found this to constitute harmless error. *See State v. Tammy R.*, 204 W. Va. 575, 514 S.E.2d 631 (1999).

In that case, a circuit court denied a mother, whose rights had not yet been terminated by order, the right to participate in a hearing to determine her child's permanent placement. *Id.* at 579, 514 S.E.2d at 635. Although we recognized that the circuit court's refusal to allow the mother to participate in the hearing was error, we ultimately concluded that "[t]he error was harmless because the record indicate[d] that the trial court was aware of all material evidence [the mother] wanted to present at the dispositional placement hearing." *Id.* at 580, 514 S.E.2d at 580. Specifically, the mother in that case "wanted to present evidence to support her desire to have [the child] placed" with one of two competing possible placements. *Id.* We explained that no harm occurred because the "trial court was . . . aware" that these individuals wished to adopt the child and the DHS had evaluated the individuals to this end. *Id.* After reviewing the evaluations, the DHS "nevertheless recommended permanent placement with [the child's] relatives to be in her best interest." *Id.* Similarly, here, the petitioners had no additional evidence to present to the court and admitted that their opinions about which competing placement should obtain guardianship were to be informed by the home study evaluations of those placements—evidence the court was already set to consider. For these reasons, we conclude that the petitioners are entitled to no relief.

For the foregoing reasons, we find no error in the decision of the circuit court, and its April 9, 2024, order is hereby affirmed.

Affirmed.

**ISSUED**: June 27, 2025

**CONCURRED IN BY**:

Chief Justice William R. Wooton
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice C. Haley Bunn

**DISSENTING:**

Justice Charles S. Trump IV


Trump, Justice, dissenting:

While I agree with the majority that the circuit court erred in dismissing the parent-petitioners, I must respectfully dissent from the majority's conclusion that such error was harmless. The parent-petitioners retained parental rights to the children and had a fundamental interest in where the children would be placed. The circuit court's actions deprived them of the opportunity to have their voices heard on this consequential issue and, thereby, denied them some of the most profound rights established in the West Virginia and United States Constitutions.

This Court has held that "[t]he Due Process Clauses of Article III, Section 10 of the Constitution of West Virginia and of the Fourteenth Amendment of the Constitution of the United States protect the fundamental right of parents to make decisions concerning the care, custody, and control of their children." Syl. Pt. 3, *Lindsie D.L. v. Richard W.S.*, 214 W. Va. 750, 591 S.E.2d 308 (2003). We have recognized in this regard that "[t]he right of a parent to make decisions concerning the care, custody, and control of her children is among the most cherished fundamental liberty interests." *Alyssha R. v. Nicholas H.*, 233 W. Va. 746, 753, 760 S.E.2d 560, 567 (2014). And, as the United States Supreme Court has similarly recognized, "[t]he liberty interest at issue in this case—the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by this Court." *Troxel v. Granville*, 530 U.S. 57, 65 (2000).

Against this background, I cannot agree that depriving the parents of the right to be heard on placement of the children was harmless. I would, therefore, reverse the circuit court and remand this case for further proceedings with the parent-petitioners having the right to participate in such proceedings.

4