IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2023 Term

**FILED**

**March 27, 2023**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 22-0045

IN RE C.M.-1 & C.M.-2

Appeal from the Circuit Court of Harrison County
The Honorable James A. Matish, Judge
Case Nos. 21-JA-120 and 21-JA-121

REVERSED AND REMANDED

Submitted:  January 10, 2023
Filed:  March 27, 2023

Allison S. McClure, Esq.
McClure Law PLLC
Clarksburg, West Virginia
Guardian ad Litem

Patrick Morrisey, Esq.
Attorney General
Charleston, West Virginia
Chaelyn W. Casteel, Esq.
Assistant Attorney General
Fairmont, West Virginia
Michael R. Williams, Esq.
Senior Deputy Solicitor General
Charleston, West Virginia
Counsel for Petitioner
Department of Health and Human Resources

Dean R. Morgan, Esq.
The Law Office of Dean Morgan, Esq.
Clarksburg, West Virginia
Counsel for Respondent

CHIEF JUSTICE WALKER delivered the Opinion of the Court.

JUSTICE WOOTON dissents and reserves the right to file a dissenting opinion.

1. "'"Although conclusions of law reached by a circuit court are subject to de novo review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).' Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011)." Syllabus Point 1, *In re S.L.*, 243 W.Va. 559, 848 S.E.2d 634 (2020).

2. "Although parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children." Syllabus Point 3, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996).

3. "'A parent has the natural right to the custody of his or her infant child and, unless the parent is an unfit person because of misconduct, neglect, immorality,

abandonment or other dereliction of duty, or has waived such right, or by agreement or otherwise has transferred, relinquished or surrendered such custody, the right of the parent to the custody of his or her infant child will be recognized and enforced by the courts.' Syllabus, *Whiteman v. Robinson*, 145 W.Va. 685, 116 S.E.2d 691 (1960)." Syllabus Point 7, *In re Antonio R.A.*, 228 W. Va. 380, 719 S.E.2d 850 (2011).

WALKER, Chief Justice:

Several months after the child C.M.-1 and his sibling were removed from the home of their mother in April 2021 because of drug use and other dismal conditions, Respondent Father K.P. was identified as C.M.-1's father, and the pending abuse and neglect petition was amended to add him as an alleged neglectful parent.[1] At Father's adjudicatory hearing in November 2021, the undisputed evidence showed that Father had seen C.M.-1 only one time in the then-seven-year-old's life, provided no support other than involuntary child support payments, and had never personally investigated C.M.-1's living conditions. But the circuit court declined to make a finding of abandonment based on involuntary child support payments and because Father alleged that the child's mother sent him Facebook messages refusing him visitation with C.M.-1. After reviewing this appeal by the West Virginia Department of Health and Human Resources and C.M.-1's guardian ad litem, we disagree with the circuit court. Because Father never sought court-ordered visitation or custody in spite of his knowledge of C.M.-1's mother's deficient parenting, he showed no genuine interest in C.M.-1's well-being—even considering the child support payments withheld annually from his tax refund. And given the passage of so many years without any contact with his child, Father demonstrated a settled purpose to forgo his responsibilities and duties to C.M.-1, and thus abandoned him.

---

[1] We use initials to identify the parties in cases involving sensitive facts. *See In re L.W.*, 245 W.Va. 703, 706, 865 S.E.2d 105, 108 (2021) (citing W. Va. R. App. Proc. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990)).

# I. FACTUAL AND PROCEDURAL BACKGROUND

On April 30, 2021, a Child Protective Services worker for DHHR filed a petition for the emergency removal of C.M.-1 and C.M.-2 from the home of Mother and J.M.[2] The petition filed in the Circuit Court of Harrison County alleged, among other things, that Mother and J.M. "shoot up and [ab]use things like Xanax and Subutex[,]" that police found a needle at the foot of C.M.-1's bed, and that a person found Mother and J.M. incapacitated on the bathroom floor of a hotel due to drug abuse while caring for C.M.-1 and C.M.-2. The petition stated that C.M.-1's biological father was unknown to the DHHR at the time. The circuit court granted the emergency petition on April 30, 2021, and it held an adjudicatory hearing on July 7, 2021. By order entered July 15, 2021, the circuit court adjudicated Mother and J.M. as abusive and neglectful parents.[3] The circuit court found that Mother and J.M. subjected C.M.-1 and C.M.-2 to domestic violence, unsanitary living conditions, dangerous environments, and drug abuse.

---

[2] C.M.-1 was born in February 2015 and is approximately eight years old. C.M.-2 was born in June 2018 but is not at issue in this appeal. J.M. is C.M.-2's biological father and C.M.-1's step-father. Mother is the biological mother of both children. Father is the biological father of C.M.-1.

[3] According to the guardian ad litem, upon removing C.M.-1 and C.M.-2, the DHHR placed C.M.-1 with his maternal great-grandmother while Mother and J.M. participated in improvement periods. Mother's and J.M.'s improvement periods were set to expire on January 4, 2023, and the circuit court scheduled a dispositional hearing for January 17, 2023. The parties have not provided a status update since the scheduled dispositional hearing.

On September 9, 2021, after discovering the birth certificate listing Father as C.M.-1's father, the DHHR filed an amended abuse and neglect petition adding Father as an alleged neglectful parent. The petition asserted that he abandoned C.M.-1 by not visiting him since 2017, not petitioning a court for visitation or custody, and not protecting him from the abusive and neglectful environment he endured under Mother's care.

The circuit court conducted an adjudicatory hearing for Father on November 17, 2021. At the hearing, Mother testified that Father had not visited C.M.-1 since a brief visit in 2017, had not requested visitation with him, and had never provided material support to him—other than Father's mandatory child support withholdings and clothing when C.M.-1 was born. She also testified that C.M.-1 does not know Father is his father. Father offered competing testimony about whether Mother blocked his contact with C.M-1. Father claimed that he consistently asked Mother, through a series of Facebook messages, for visitation with C.M.-1 but that Mother refused. Father agreed that he last visited C.M.-1 in 2017 after a child support hearing in a West Virginia family court. Father also testified that he was incarcerated in 2015 shortly after C.M.-1's birth and petitioned for a paternity test from prison because he wanted contact with C.M.-1. Father explained that in September 2017, upon his release from prison, he asked Mother for visitation with C.M.-1 and asked several times between then and July 12, 2020, when he last contacted her. Father also explained that he had remained sober, maintained employment, and had custody of two children since his release from prison. He testified that DHHR withheld

3

from his pay and taxes $257.00 per month in child support for C.M.-1. Father also claimed he sent Mother money through a single Western Union transfer in 2018.[4]

By order entered December 17, 2021, the circuit court denied DHHR's petition to adjudicate Father as a neglectful parent. It found that Father fulfilled his parental duties because "[Mother] denied him access to the child . . . [,] [h]e paid significant support and thought [Mother] to be sober."[5] The DHHR and C.M.-1's guardian ad litem appeal the circuit court's order and seek reversal and remand for the circuit court to adjudicate Father as a neglectful parent.

## II. STANDARD OF REVIEW

For appeals from abuse and neglect proceedings, we review questions of law de novo, defer to a circuit court's factual findings unless clearly erroneous, and affirm a circuit court's findings—if plausible in light of the evidence:

> "'Although conclusions of law reached by a circuit court are subject to de novo review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing

---

[4] The circuit court made no finding about this alleged Western Union transfer, and the parties provided no evidence of it in the appendix record. So, we give no factual weight to it on appeal.

[5] *See* F.N. 18 *infra*.

4

court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.' Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996)." Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).[6]

"Whether a parent failed to visit or support a child is a question of fact. Whether a parent's failure to visit or support constitutes willful abandonment, however, is a question of law."[7]

And we are mindful that "[a]lthough parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children."[8]

## III. ANALYSIS

Under the West Virginia and United States Constitutions, a parent has a fundamental right to raise his child.[9] But as this Court has explained, the right is not absolute and may be forfeited by abandonment, among other reasons:

"A parent has the natural right to the custody of his or her infant child and, unless the parent is an unfit person because of misconduct, neglect, immorality, abandonment or other dereliction of duty, or has waived such right, or by agreement

---

[6] Syl. Pt. 1, *In re S.L.*, 243 W. Va. 559, 848 S.E.2d 634 (2020).

[7] *In re Adoption of Angela E.*, 402 S.W.3d 636, 640 (Tenn. 2013).

[8] Syl. Pt. 3, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996).

[9] *See, e.g.*, Syl. Pt. 1, *In re Willis*, 157 W. Va. 225, 207 S.E.2d 129 (1973).

5

> or otherwise has transferred, relinquished or surrendered such custody, the right of the parent to the custody of his or her infant child will be recognized and enforced by the courts." Syllabus, *Whiteman v. Robinson*, 145 W.Va. 685, 116 S.E.2d 691 (1960).[10]

And if a father abandons his child, a circuit court may adjudicate him as a neglectful parent after notice and a hearing.[11] In this context, "'[a]bandonment' means any conduct that demonstrates the settled purpose to forego the duties and parental responsibilities to the child[.]"[12]

We recently considered similar allegations of abandonment in *In re T.M.*[13] There, the father had been adjudicated as an abusive and neglectful parent, and his parental rights were terminated.[14] On appeal, we deemed the abandonment allegations sufficient to support the circuit court's adjudication, without considering additional allegations of abuse and neglect made by DHHR.[15] We upheld the circuit court's finding that the father abandoned his children because he had not lived with them for approximately six years,

---

[10] Syl. Pt. 7, *In re Antonio R.A.*, 228 W. Va. 380, 719 S.E.2d 850 (2011).

[11] *See, e.g.*, Syl. Pt. 6, *In re Christina L.*, 194 W. Va. 446, 460 S.E.2d 692 (1995).

[12] W. Va. Code § 49-1-201 (2015).

[13] No. 19-0779, 2020 WL 2043308, at *1 (W. Va. April 28, 2020) (memorandum decision).

[14] *Id.*

[15] *Id.* at *4 ("[S]ufficient evidence, apart from any allegations of drug abuse and domestic violence in 2016, existed to adjudicate petitioner of abuse and neglect.").

had not visited them in approximately three years, and did not provide monetary support, supervision, food, or clothing—despite knowing where they resided.[16] And even though the father blamed the mother for blocking his contact with the children, we found the argument unpersuasive because "petitioner knew of the children's whereabouts [for years], but took no steps to petition any court for custody or visitation."[17]

Like the father in *In re T.M.*, Father had not visited C.M.-1 for years before the adjudicatory hearing and provided minimal support to him. The undisputed facts show that the first and last time Father visited C.M.-1 was in 2017—approximately four years prior to the adjudicatory hearing. And while we must defer to the circuit court's factual finding that Mother blocked his contact with the child, a parent may not sleep on his rights to petition a court for custody or visitation. That is especially true under the facts of this case where Father admitted that he knew of Mother's deficient parenting.

The circuit court found that "[Father] testified that he knew he would win in family court due to [Mother] being in the same situation, that being that she was using drugs[,]" and it found that "[Father] has never sought to gain custody or visitation despite

---

[16] *Id.*

[17] *Id.*

being aware he could do so."[18]  Yet, Father acted with indifference to C.M.-1's well-being and his personal relationship with C.M.-1 by not petitioning a court for custody or visitation, or, at a minimum, investigating C.M.-1's living conditions.  A basic investigation would have revealed the dangerous, neglectful, and drug-ravaged environment to which Mother exposed him.

Instead, Father claims he fulfilled his parental responsibilities by sending Facebook messages to Mother and J.M.  He rationalized his decision by claiming, "I didn't want to take [Mother's] children from her."  But, for whatever reason, by not asserting his parental rights, Petitioner demonstrated a settled purpose to forgo his responsibilities and duties to C.M.-1.  As we have explained, "non-custodial parents are expected to show interest in the child's welfare and provide financial and emotional support for the child; a failure to do so is strong evidence of abandonment . . . ."[19]  Father certainly did not show a genuine interest in C.M.-1's well-being or provide emotional support to him.  A parent with a genuine interest would have investigated his child's life circumstances, sought court

---

[18] The circuit court clearly erred by finding that Father reasonably believed Mother maintained sobriety.  The finding contravenes Father's admission that he knew Mother used drugs.  Even so, Father would have learned of Mother's drug use with a basic inquiry into his child's life, and the circuit court should have given minimal consideration to Father's self-serving, contradictory statement.

[19] *In re R.R.*, No. 17-0930, 2018 WL 1251845, at *3 (W. Va. March 12, 2018) (memorandum decision) (citing *In re Katie S.*, 198 W. Va. at 85-86, 479 S.E.2d at 595-96).

intervention to assert his parental rights, and certainly would not rely solely on Facebook messages to the child's mother as a feeble attempt to assert his parental rights.[20]

Likewise, we recently addressed similar facts in *In re Adoption of H.G.*[21] Although the case involved abandonment allegations in an adoption case under Chapter 48 of the West Virginia Code, we found that "like State-initiated [abuse and neglect] actions [under Chapter 49], a parent's failure to financially support and communicate or visit with [his] child for an extended period of time is grounds for terminating that parent's rights . . . ."[22] When terminating the biological mother's parental rights in the case, we explained that "'[t]he significance of the biological connection is that it offers' a birth parent 'an opportunity' that no one else possesses to 'develop a relationship with his offspring.' But a birth parent's failure to grasp that opportunity can have significant consequences."[23] We reasoned that the birth mother had abandoned her child because, among other things, she "only paid child support when forced to do so through wage garnishment . . . and purchased

---

[20] *See*, *e.g.*, *In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009) ("Father had no explanation, however, for his failure to take legal action or to request informal visitation from Great Aunt after he established paternity. We therefore conclude that there is clear and convincing evidence that establishes Father's abandonment of M.L.P. by willful failure to visit.").

[21] 246 W. Va. 105, 866 S.E.2d 170 (2021).

[22] *Id*. at 113, 866 S.E.2d at 178.

[23] *Id.* at 112, 866 S.E.2d at 177 (quoting *Lehr v. Robertson*, 463 U.S. 248, 262 (1983)).

9

no gifts or anything else for him for years[]" and had no physical contact or communication with the child for approximately four years.[24]

In this case, Father's biological relationship with C.M.-1 provided him an unparalleled opportunity to develop a relationship with his child. When Mother blocked Father's contact with C.M.-1, Father had options to pursue that opportunity. For one, Father knew he possessed the right to petition a court for custody or visitation. He testified that he chose not to because, "I didn't need to involve the courts in my life to be a parent." But when Mother impeded his parental rights, the child's best interest required him to act— regardless of his opinion about the courts. The law's concept of family relies upon the presumption that a child's best interest requires a relationship with his parents.[25] But Father placed his personal reluctance to initiate a court proceeding over C.M.-1's best interest. As we have reiterated, "in all cases involving children, the polar star is the best interests of the child."[26] By not asserting his parental rights, Father left C.M.-1 in Mother's

---

[24] *In re Adoption of H.G.*, 246 W. Va. at 115, 866 S.E.2d at 180.

[25] *Parham v. J.R.*, 442 U.S. 584, 602 (1979) ("The law's concept of the family rests on a presumption that parents possess what a child lacks in maturity, experience, and capacity for judgment required for making life's difficult decisions. More important, historically it has recognized that natural bonds of affection lead parents to act in the best interests of their children."); *see also* Syl. Pt. 4, *Lindsie D.L. v. Richard W.S.*, 214 W. Va. 750, 591 S.E.2d 308 (2003) ("There is a presumption that fit parents act in the best interest of their children.").

[26] *In re L.M.*, 235 W. Va. 436, 445, 774 S.E.2d 517, 526 (2015).

care where C.M.-1 suffered abuse and neglect, and, by doing so, Father also deprived C.M.-1 of a relationship with his biological father.

The circuit court also considered Father's involuntary child support payments as evidence that he fulfilled his parental responsibilities—in spite of his clear parental shortcomings. But child support payments alone do not prevent an abandonment finding.[27] In adoption cases, we have said, "involuntary payment of child support through wage withholding alone was insufficient to defeat a finding that [a father] failed to financially support his child." [28] Likewise, here, Father did not satisfy his parental responsibilities and duties to C.M.-1 through the involuntary child support withholdings. Tellingly, a West Virginia family court ordered Father to pay $257.00 per month in child support. But Mother testified, "I only receive it on the tax day of every year. I've received it like that for the past two years." Similarly, Father testified, "I switched jobs for a minute and I lost child support. But I have an offset—I just received a tax offset from the DHHR in West Virginia . . . . I'm only behind $517.00 . . . ." The undisputed evidence shows that the State had to offset child support payments from Father's tax refunds because he disregarded his obligation to pay monthly. And Father remained in arrears as recently as

---

[27] *See, e.g.*, *In re M.M.*, No. 12-0491, 2012 WL 4069593, at *3 (W. Va. Sept. 7, 2012) (memorandum decision) ("This Court therefore finds no error in the circuit court's finding that petitioner abandoned his child, despite his previous child support payments.").

[28] *In re Adoption of H.G.*, 246 W.Va. at 115, 866 S.E.2d at 180 (citing *In re Adoption of C.R.*, 233 W. Va. 385, 389-90, 758 S.E.2d 589, 593-94 (2014)).

the hearing date.  For these reasons, the circuit court clearly erred by finding that Father fulfilled his monthly child support obligations.

Rather, Father paid the equivalent of $257.00 per month after the State withheld money from his tax refunds annually.  We have held, "[t]he duty of a parent to support a child is a basic duty owed by the parent to the child . . . ."[29]  We give limited credit to Father's half-hearted efforts to fulfill his basic parental duty; his involuntary and inconsistent child support withholdings do not rebut the strong evidence of abandonment established by his failure to visit C.M.-1 since 2017, his manifest disregard for C.M.-1's well-being, and his minimal assertion of his parental rights.[30]  The circuit court erred by concluding otherwise.

## IV.  CONCLUSION

For the above reasons, we reverse the circuit court's December 17, 2021 order refusing to adjudicate Father as an abusive and neglectful parent.  We remand for the circuit court to adjudicate him on the grounds of abandonment and to initiate further proceedings.

---

[29]  Syl. Pt. 3, in part, *Wyatt v. Wyatt*, 185 W. Va. 472, 408 S.E.2d 51 (1991).

[30]  *See*, *e.g.*, *In re Adoption of C.R.*, 233 W. Va. at 390, 758 S.E.2d at 594 (finding abandonment despite involuntary wage withholdings).

Reversed and Remanded.